NICOLA T. HANNA
United States Attorney
PATRICK R. FITZGERALD
Assistant United States Attorney
Chief, National Security Division
REEMA M. EL-AMAMY (Cal. Bar No. 237743)
Assistant United States Attorney
Terrorism and Export Crimes Section
1500 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-0552
Facsimile: (213) 894-6436
E-mail: Reema.El-Amamy@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STEVE S. KIM,<br><br>Defendant. | No. CR 18-901-TJH<br><br><u>Motion to Preclude Argument and Any Related Jury Instructions that Attempting to Possess Ricin for the Purpose of Committing Suicide is a Defense to the Charged Crime</u><br><br>Hearing Date: April 1, 2019<br>Hearing Time: 10 a.m.<br>Location: Courtroom of the Hon. Terry J. Hatter, Jr. |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Reema M. El-Amamy, hereby files its Motion to Preclude Argument and Any Related Jury Instructions that Attempting to Possess Ricin for the Purpose of Committing Suicide is a Defense to the Charged Crime.

//

//

This government's motion is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: February 28, 2019

Respectfully submitted,

NICOLA T. HANNA
United States Attorney

PATRICK R. FITZGERALD
Assistant United States Attorney
Chief, National Security Division

/s/
REEMA M. EL-AMAMY
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## TABLE OF CONTENTS

DESCRIPTION PAGE

I. INTRODUCTION....................................................1

II. STATEMENT OF FACTS..............................................3

III. ARGUMENT.......................................................11

A. It is Unlawful to Attempt to Possess Ricin for a Non-Peaceful Purpose.........................................11

B. Attempting to Obtain Ricin to Commit Suicide is Not a Defense to the Charged Crime.............................13

IV. CONCLUSION.....................................................18

# TABLE OF AUTHORITIES

DESCRIPTION PAGE

**CASES**

Dole Food Co. v. Patrickson,
538 U.S. 468 (2003)....................................17

FCC v. NextWave Personal Communications, Inc.,
537 U.S. 293 (2003)....................................16

FDIC v. Meyer,
510 U.S. 471 (1994)....................................15

Franklin Nat'l Bank v. New York,
347 U.S. 373 (1954)....................................17

Meghrig v. KFC Western, Inc.,
516 U.S. 479 (1996)....................................17

United States v. Baker,
98 F.3d 330 (8th Cir. 1996)............................11

United States v. Fries,
781 F.3d 1137 (9th Cir. 2015)......................17, 18

United States v. Le,
902 F.3d 104 (2nd Cir. 2018)...................13, 14, 15

United States v. Leahy,
169 F.3d 433 (7th Cir. 1999)...........................11

United States v. Levenderis,
806 F.3d 390 (6th Cir. 2015)........................3, 14

United States v. Milzman,
CR No. 14-186-KBJ (District of Columbia)............3, 14

Whitfield v. United States,
543 U.S. 209 (2005)....................................16

**STATUTES**

18 U.S.C. § 175....................................passim

18 U.S.C. § 1365(a)....................................16

18 U.S.C. § 1716(j)(2).................................16

Pub. L. No. 101-298....................................12

Pub. L. No. 104-132................................12, 13

## TABLE OF AUTHORITIES (CONTINUED)


DESCRIPTION PAGE

**REGULATIONS**

42 C.F.R. § 73.3, et. seq. .................................... 3, 13

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

During the Fall of 2018, defendant Kim attempted to buy ricin – a highly lethal poison – in order to kill a 110 pound victim. He attempted to buy the ricin from a hidden service website that is a publicly accessible marketplace and forum. However, defendant Kim was not aware that the individual from whom he was attempting to buy the poison was an Online Covert Employee ("OCE") with the Federal Bureau of Investigations ("FBI"). During the negotiations, defendant Kim told the OCE that the victim would be drinking the ricin, and asked if the ricin should be in liquid or powder form if defendant Kim planned to place the ricin in the 110 pound victim's drink.

After defendant Kim bought the ricin, the OCE provided defendant Kim with instructions regarding how to access the ricin in the package that the OCE would ship via the United States Postal Service ("USPS") to defendant Kim's work address. The OCE told defendant Kim that the ricin would be hidden in a compartment of a toy vehicle, and gave defendant Kim special instructions regarding how to open the compartment. FBI agents put a vial of substance purporting to be ricin in the compartment of the toy vehicle, and affixed a beeper to the compartment in order to signal to law enforcement when the compartment was opened. A federal search warrant authorized the search of the person or persons who, based on the beeper, opened the compartment containing the vial of substance purporting to be ricin.

On November 29, 2018, law enforcement delivered the package to defendant Kim's work address. Defendant Kim took the package home that same night, and opened the compartment that contained what he believed to be a deadly toxin while his approximately 110 pound wife

and two small children were with him at home. The beeper activated and law enforcement placed defendant Kim under arrest. During a Mirandized interview, defendant Kim admitted to attempting to purchase ricin from the OCE, and that he wanted to purchase enough ricin to kill one person. Defendant Kim also described his own weight as 150 pounds, and discussed anger issues that he had after he had completed his military service in Iraq, prior substance abuse issues, as well as thoughts of suicide.

The government will argue at trial that, despite any suicidal thoughts or feelings that defendant Kim may have had, when defendant Kim made contact with the OCE, it was for the purpose of trying to kill a 110 pound victim – likely his wife. He did not have any conversations about suicide with the OCE, but rather discussed how the intended victim would be drinking the ricin and whether powder could be concealed in a drink, or if it should “come in liquid.” It is without dispute that this conduct constitutes a violation of 18 U.S.C. § 175(a).

Additionally, attempting to obtain ricin in order to commit suicide is not a defense to the charged crime. Section 175(a) of Title 18 criminalizes attempted possession of ricin “for use as a weapon.” 18 U.S.C. § 175(a). The statute defines the term “for use as a weapon” to include attempted possession of ricin “for other than prophylactic, protective, bona fide research, **or other peaceful purposes**.” 18 U.S.C. § 175(c) (emphasis added). The government is unaware of any legal authority that supports the argument that attempting to possess ricin in order to commit suicide is a “peaceful purpose” as defined by 18 U.S.C. § 175(c). Indeed, defendants have been convicted under 18 U.S.C. § 175 in connection with their

possession of ricin related to their plans to commit suicide. See, e.g., United States v. Levenderis, 806 F.3d 390, 395 (6th Cir. 2015); United States v. Milzman, CR No. 14-186-KBJ (District of Columbia).

The government respectfully requests that this Court preclude argument by defendant Kim at trial that obtaining ricin for purposes of attempted suicide is a defense to the charged crime, and that no jury instructions supporting that legally incorrect argument be given. Additionally, in order to avoid confusion at trial, in the event that the defense introduces any evidence of thoughts of suicide, or infers that the ricin was purchased for the purpose of the defendant taking his own life, the government respectfully requests an instruction that suicide is not a "peaceful purpose" as defined in 18 U.S.C. § 175(c).

**II. STATEMENT OF FACTS**

Website #1[1] is a hidden service website that is a publicly accessible marketplace and forum. A username and password is required to access the marketplace and forum for Website #1, but the registration process is open to the public. The marketplace for Website #1 contains numerous subsections advertising the sale of ricin. Ricin is a highly lethal biological toxin, and can be fatal if ingested, inhaled, or injected, even if in small quantities. There is no antidote or cure for ricin poisoning. The Secretary of Health and Human Services has determined that ricin "pose[s] a severe threat to public health and safety" and has placed ricin on the list of select agents and toxins. 42 C.F.R. § 73.3.

[1] The actual name of Website #1 is known to law enforcement. The site remains active, and disclosure of the name of the site would potentially alert users to the fact that law enforcement action is being taken against the site.

On September 29, 2018, an FBI Online Covert Employee ("OCE") posing as an online seller for Website #1 received an unsolicited message from defendant Kim inquiring about the availability of ricin. On October 2, 2018, the OCE responded by saying: "I make ricin on demand and to fit specific need? I not ship everywhere. where you need shipped i let you know if it possible. ok?" The same day, defendant responded: "what is the minimum order and how much. i would need it shipped to los angeles."

On October 3, 2018, the OCE responded: "Hollywood you near. very nice. I ship to america before no problem. no min amount friend i make to order for your need. you have . . . account ? More secure so we can work out what amount you need to fix whoever cause you problem. cost near 200 euro plus cost to ship. but depend on need. Maybe less for amount you want. we work out detail." On October 5, 2018, defendant Kim replied: "i hope i don't offend you but would prefer to transact on this market. would that be ok? what is the typical amount?" On October 8, 2018, the OCE responded: "we stay on market if you like. Not offend. no typical amount. Last person buy 10mg in solution. Amount you need depend on how you want to give to person and how big person is. You want to make them eat ricin or you want inject?"

After not receiving a response, on October 14, 2018, the OCE asked defendant Kim: "you still want?" On October 15, 2018, the defendant responded: "yes. how much total with shipping to united states?" On October 16, 2018, the OCE responded: "Maybe 300 Euro. Never know real cost to post till I have post code from you. You never say how much ricin you need friend. Like I mention before I

make each batch for person. Like I say last customer buy 10mg in suspension. That work perfect for how he want to deliver and **lethal for victim (factored in height/weight)**. Ricin very dangerous and easy use. you want I make then I make for you no problem. But need detail how you want product so I know how much for you to make okay friend. You say how you want use and what form (powder?) **and height/weight of victim so I make best product very lethal for you to us**" (emphasis added).

On October 17, 2018, the defendant replied: "the person would be **50kg/110lbs** . shipping would be to los angeles, postal code 90036" (emphasis added). On this date, the defendant's wife weighed approximately 110 pounds, and, according to current Department of Motor Vehicle records, the defendant's weight was 170 pounds. On October 18, 2018, the OCE replied: "ok that weight not need lot ricin to be bad day for person. I can make for you no problem. You know how you want to deliver to person so I know to ship as powder or liquid? You make eat or drink it make difference in dose. You have questions I help ok! I start getting ready to make you order friend." On October 18, 2018, the defendant replied: "**they would be drinking it.** so would that come in liquid? is powder easier to ship? thank you" (emphasis added).

On October 19, 2018, the OCE stated: "as powder you still able to put in drink no problem. It dissolve in liquid and still do job. I ship powder or liquid before no issue, but powder more easy to conceal I think. You want I make it powder?" The same day, defendant Kim replied: "ok. can you tell me how much to ship powder? what is

the estimated shipping? should i just place the order through your listing?" On October 19, 2018, the OCE responded: "320 Euro this include shipping and cost for concealment. I make custom listing for you ok. Should be ready in few day. I have make supply run soon." On October 21, 2018, the defendant stated: "OK. please link the listing when complete." On October 23, 2018, the OCE sent the link to purchase the ricin on Website #1.

On October 29, 2018, the OCE stated: "it been days friend and not have word from you. you still need?" On November 1, 2018, defendant Kim replied: "sorry for the delay. i will get you payment by tomorrow, [Friday, November 2, 2018]." On November 6, 2018, the OCE stated: "Hollywood! Your day must be many times longer than my day. HA! It has been many tomorrows here friend. You have troubles?" On November 7, 2018, the defendant replied: "sorry for the delay. waiting for funds to transfer and will submit payment once i have funds ready. will send as soon as its ready. thank you for your patience." On Saturday, November 10, 2018, defendant Kim stated: "sorry again for the delay. just sent payment." The same day, defendant Kim stated: "Sorry for the delay. Here is the shipping address: Steve Kim 5670 Wilshire Blvd. Floor 24 Los Angeles, CA 90036."

Blockchain[2] analysis of the transaction information associated with Jabber451's purchase of ricin on Website #1 revealed the funds originated from the Bitcoin address ending in "GZuC." The transaction occurring on November 10, 2018 involved approximately 0.05809 Bitcoin being sent from the Bitcoin address ending in "GZuC," which was subsequently followed by the Bitcoin address ending in "GZuC" sending 0.056999 BTC to the payment address associated with Website #1 for the ricin purchase.

On November 13, 2018, the OCE replied: "no worries friend. i work on concealment now and let you know when it ship out. now that you purchase and i see you serious we speak more free. You understand how best use? if not i work with product for many times and have great understanding. you have ricin question you ask ok." On November 14, 2018, defendant Kim replied: "thank you for your patience. how long do you think shipping will take?" On November 14, 2018, the OCE stated: "not take to long friend. My contact at post is on holiday and not able to ship until 19th or 20th. You need before for urgent reason? or is sending then ok. You let me know but it much safe for all to send when contact is back. if you ok with that I will refund shipment cost for troubles. You send me btc [bitcoin] wallet and I send you refund ok." On November 15, 2018, the defendant replied: "i can wait. thank you for the quick reply."

[2] The blockchain is a public ledger of all Bitcoin transactions that have ever been executed. It is constantly growing as completed blocks of new transactions are added to it in a linear, chronological order.

On November 20, 2018, despite the fact that defendant Kim purchased the ricin, the sale auto-declined in the cryptocurrency market as the package had not been shipped yet. On November 20, 2018, the OCE told defendant Kim that: "listing auto decline is mistake. i already shipped today! forgot to mark ship on market...you purchase again and i send you tracking number soon. sorry for issue friend." The OCE also provided the defendant with a link to make a new purchase on Website #1. On Wednesday, November 22, 2018, defendant Kim replied: "It will take time for me to get funds transferred. how fast can you ship it and for me to receive package? My time window is very short now." On November 23, 2018, the OCE replied: "package ready to ship. since I make mistake I pay for fast shipping no extra cost for you. so you get in a few days after I ship. it not take weeks to get to you this way and you have ricin in time to use."

On November 23, 2018, defendant Kim stated: "i'm sure you are aware of the recent volatility with bitcoin prices. Will you be able to accept the original amount (0.05699934 BTC) of the listing? if not, i will need to wait until i can get more funds converted and i'm afraid i'm running out of time. i can send the BTC i have available and send additional funds (~0.014 BTC) if you are willing to ship now. i hope you can trust me as i think i've shown i'm a serious buyer. thank you." On November 24, 2018, the OCE replied: "Yes. Market crazy. I fix price on listing to reflect original amount of btc. you send additional amount to btc wallet after I ship ok. I do

this since I made error which cause this issue and I see you are serious buyer." The same day, the defendant stated: "thank you. i just completed the order. i will send additional funds when I have funds ready and when shipping confirmation is sent. sorry don't mean to pester you but just want to make sure this shipment will be expedited since i am on a time constraint now."

On November 24, 2018, the OCE stated: "here are tracking numbers CP967321681UA. might take day are so to show in system. I put rush on shipping like you need. Maybe there Wednesday or Thursday they say. I send you btc wallet address soon so let me know when you have other fund." On November 26, 2018, defendant Kim stated: "thank you. i will message you as soon as funds are ready. what is the shipping method (i.e. DHL, Fedex)?" The same day, the OCE replied: "contact at post say national post deliver through usps in america. Have you check tracking at usps website."

On November 28, 2018, the OCE stated: "Hey friend you have rest fund? I have wallet to send you when ready. Also I tell you of package you order. You find ricin in battery part of toy truck ok. You need special tool to open battery part ok. I put wrench in bag. Ban on underneath part of truck. Sometime tool is issue. When you get package you try open fast and make sure tool work. If you have problems with tool I send new one right away ok so make time frame you need."

The same day, the Honorable Karen L. Stevenson authorized an anticipatory search warrant in 18-MJ-03151. The warrant authorized

the installation and monitoring, for a period of up to fourteen days, of a Global Positioning System ("GPS") tracking device (the "tracking device") placed inside a package (the "subject package") created and delivered by law enforcement purporting to be a United States Postal Service employee delivered the subject package to defendant Kim's work address. The subject package contained a toy vehicle. The bottom of the toy vehicle had a battery compartment with a cover secured by a small screw. A vial of substance purporting to be ricin was placed in the battery compartment. There was a switch (the "beeper") on the battery compartment that notified law enforcement when the battery compartment was opened or closed. The subject package was affixed with an international postal tracking number CP967321681UA, addressed to Steve Kim, at his work address. The warrant authorized the search of the person or persons who, based on the beeper, opened the compartment containing the vial of substance purporting to be ricin.

On November 29, 2018, a law enforcement officer purporting to be a United States Postal Service employee delivered the subject package to defendant's work address. The defendant took custody of the subject package, and took the subject package to his residence that evening. At approximately 6:48 p.m., the beeper was activated in defendant Kim's residence, and, at approximately 7:15 p.m., law enforcement entered the residence while defendant Kim's wife and two small children were at home. The defendant was identified as the individual who had activated the beeper, and was subsequently placed

under arrest. During a Mirandized interview with law enforcement, defendant Kim admitted to purchasing ricin from Website #1, and described marital issues between him and his wife. Defendant Kim also described his own weight as 150 pounds. Finally, defendant Kim discussed anger that he had after he completed his military service in Iraq, prior substance abuse issues, as well as thoughts of suicide.

## III. ARGUMENT

### A. It is Unlawful to Attempt to Possess Ricin for a Non-Peaceful Purpose.

"Ricin is a toxin derived from the castor bean plant and is considered to be the second most deadly toxin known to man; a toxin for which there is no known antidote. When inhaled or ingested, in even a tiny amount, ricin dust is typically fatal. Equally as disconcerting, ricin is virtually impossible to trace as a cause of death." United States v. Leahy, 169 F.3d 433, 436 (7th Cir. 1999); see also United States v. Baker, 98 F.3d 330, 333 (8th Cir. 1996) (citing witness testimony that 0.7 grams of 5% pure ricin "was enough to kill 126 people.")

In 1972, the President entered into the Convention on the Prohibition of the Development, Production and Stockpiling of Bacteriological (Biological) and Toxin Weapons and on their Destruction, opened for signature April 10, 1972, 26 U.S.T. 583, 1015 U.N.T.S. 163 (the "Biological Weapons Convention," or "BWC"). The Senate approved the BWC in 1974, and the BWC entered into force for the United States March 26, 1975. The Convention sought "to exclude completely the possibility of bacteriological (biological) agents and

toxins being used as weapons," and accordingly "prohibit[] the development, production, and stockpiling of" biological weapons. BWC Preamble.

To implement the United States' obligations under the BWC, Congress enacted the Biological Weapons Anti-Terrorism Act of 1989 (the "Act"), Pub. L. No. 101-298, 104 Stat. 201. Congress declared that the Act had two purposes – to "implement the [BWC]" and to "protect the United States against the threat of biological terrorism." Congress expressly stated that "[n]othing in this Act is intended to restrain or restrict peaceful scientific research or development." Id. § 2, 104 Stat. 201 (codified at 18 U.S.C. § 175 note).

Congress subsequently amended the Act as part of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214. Congress made the following findings in connection with the enactment:

> (1) certain biological agents have the potential to pose a severe threat to public and health safety;
>
> (2) such biological agents can be used as weapons by individuals or organizations for the purpose of domestic or international terrorism or for other criminal purposes;
>
> (3) the transfer and possession of potentially hazardous biological agents should be regulated to protect public health and safety; and
>
> (4) efforts to protect the public from exposure to such agents should ensure that individuals and groups with legitimate objectives continue to have access to such agents for clinical and research purposes.

Id. § 511(a), 110 Stat. 1284. Among the amendments included in this legislation was an expansion of Section 175(a) to cover attempts, threats, and conspiracies. Id. § 511(b)(1), 110 Stat. 1284. The enactment also directed the Secretary of Health and Human Services to

promulgate regulations to govern the transfer of biological agents and toxins with "the potential to pose a sever threat to public health and safety." Pub. L. No. 104-132, § 511(d)-(g), 110 Stat. 1284-85. See also, United States v. Le, 902 F.3d 104, 114 (2nd Cir. 2018 (recognizing that 42 C.F.R. §§ 73.3-73.19 requires "persons seeking to possess, use, or transfer any select toxin, inter alia, to submit to governmental risk assessment, to obtain certificate of registration from agency, to develop for agency approval written security plan for safeguarding toxin, and to submit to unannounced inspections.")

Accordingly, Section 175(a) of Title 18 criminalizes possession or attempted possession of any toxin, including ricin, "for use as a weapon." 18 U.S.C. § 175(a). Id. The statute defines the term "for use as a weapon" to include "the development, production, transfer, acquisition, retention, or possession of any biological agent, toxin, or delivery system for other than **prophylactic, protective, bona fide research, or other peaceful purposes**." 18 U.S.C. § 175(c) (emphasis added).

Similarly, Section 175(b) of Title 18 makes it unlawful to possess any toxin, including ricin, if its possession "**under the circumstances, is not reasonably justified by a prophylactic, protective, bona fide research, or other peaceful purpose**." 18 U.S.C. § 175(b).

**B. Attempting to Obtain Ricin to Commit Suicide is Not a Defense to the Charged Crime.**

Defendant Kim admits to accessing a hidden service website over the internet to order a highly toxic substance. He admits to making arrangements to pay an individual to place the toxic substance in

international mail, and have it delivered via USPS to a public office building in Los Angeles. He admits to transporting the package with what he believed to be a deadly toxin to his home with his wife and young children, and accessing the toxin while they were at home. However, defendant argues that, because he was trying to kill himself, and not a 110 pound victim as he stated to the OCE, he is entitled to argue suicide as a defense to charged crime, and to request jury instructions that support his defense. The defendant's argument is not supported by the law.

Indeed, the case of United States v. Milzman, CR No. 14-186-KBJ (District of Columbia), is largely factually analogous. In that case, a defendant with a potential mental disorder possessed ricin with what appeared to be the intent to harm one or more individuals. However, when confronted by law enforcement, defendant Milzman insisted that he was only intent on harming himself with the ricin that he possessed in his college dorm room, and that he possessed the ricin with the intent to commit suicide. See Milzman, CR No. 14-186-KBJ Docket No. 24 at 5; Id. Docket No. 32 at 3. Despite any suicidal ideations that drove his actions, defendant Milzman's possession of ricin "under the circumstances, [was] not reasonably justified by a prophylactic, protective, bona fide research, or other peaceful purpose," and constituted a violation of 18 U.S.C. § 175(b). After his conviction on this charge, on November 10, 2014, he was sentenced to one year and one day in custody. See also, United States v. Levenderis, 806 F.3d 390, 395 (6th Cir. 2015) (examining the actions of a defendant who intended to use ricin as part of an elaborate suicide plot, and finding that because defendant possessed ricin "for a purpose other than prophylactic, protective, bona fide research, or

other peaceful purposes" that "his conduct falls within the scope of the plain language of § 175(a).")

A defendant's argument that suicide is a defense to § 175(a) may hang on the contention that, as a matter of statutory construction, a person does not produce, acquire, or possess the toxin "for use as a weapon" if the defendant intends to kill his or herself. This argument ignores the commonsense meaning of the word "weapon."

The Oxford Dictionary define a weapon as "[a] thing designed or used for inflicting bodily harm or physical damage." See English Oxford Living Dictionaries at https://en.oxforddictionaries.com/definition/weapon. When a defendant uses a biological toxin to kill his or herself, they are using the toxin for inflicting bodily harm or physical damage on his or herself. A defendant who intends to use a toxin to kill or injure anyone, including his or herself is using the toxin as a "weapon" in its plain and ordinary sense. See, e.g., FDIC v. Meyer, 510 U.S. 471, 476 (1994) (In the absence of a statutory definition, "we construe a statutory term in accordance with its ordinary or natural meaning."). The Second Circuit noted as much in an attempted murder case, United States v. Le:

> '[W]eapon' is also generally understood to signify an instrument 'designed to be used to injure or kill someone.' Black's Law Dictionary 1730–31 (9th ed. 2009). Thus, because a gun is designed to kill, an educated user of English would describe it as a 'weapon' . . . . [Ricin's] singular purpose is to kill. And that was certainly the use Le intended for it in the circumstances here.

902 F.3d 104, 115 (2d Cir. 2018).

The defendant may argue that Congress somehow implicitly intended to limit the statute only to uses of a weapon against another person. Such an argument ignores that Congress conveys when

criminal liability is confined to offenses against another person in explicit language in other statutes, and chose not do so with § 175(a).

For example, 18 U.S.C. § 1716(j)(2) provides "[w]hoever knowingly deposits for mailing or delivery, or knowingly causes to be delivered by mail, according to the direction thereon or at any place to which it is directed to be delivered by the person to whom it is addressed, anything declared nonmailable by this section, whether or not transmitted in accordance with the rules and regulations authorized to be prescribed by the Postal Service, **with intent to kill or injure another**, or injure the mails or other property, shall be fined under this title or imprisoned not more than twenty years, or both" (emphasis added).

Or, 18 U.S.C. § 1365(a) provides, "[w]hoever, with reckless disregard for the risk that **another person** will be placed in danger of death or bodily injury and under circumstances manifesting extreme indifference to such risk, tampers with any consumer product that affects interstate or foreign commerce, or the labeling of, or container for, any such product, or attempts to do so, shall—[be punished accordingly]" (emphasis added).

Because Congress knows how to limit a statute to conduct that is intended to injure another and did not do so here, the statute cannot be interpreted as containing such a requirement. See, e.g., Whitfield v. United States, 543 U.S. 209, 216 (2005) ("Congress has included an express overt-act requirement in at least 22 other current conspiracy statutes, clearly demonstrating that it knows how to impose such a requirement when it wishes to do so."); FCC v. NextWave Personal Communications, Inc., 537 U.S. 293, 302 (2003) (when Congress has

intended to create exceptions to bankruptcy law requirements, "it has done so clearly and expressly"); Dole Food Co. v. Patrickson, 538 U.S. 468, 476 (2003) (Congress knows how to refer to an indirect owner of a corporation, as distinct from a direct owner of shares in the "formal sense," and did not do so in the Foreign Sovereign Immunities Act's definition of foreign state "instrumentality"); Franklin Nat'l Bank v. New York, 347 U.S. 373, 378 (1954) (finding "no indication that Congress intended to make this phase of national banking subject to local restrictions, as it has done by express language in several other instances"); Meghrig v. KFC Western, Inc., 516 U.S. 479, 485 (1996) ("Congress . . . demonstrated in CERCLA that it knew how to provide for the recovery of cleanup costs, and . . . the language used to define the remedies under RCRA does not provide that remedy.").

Finally, the defense argument fails in the context of the purpose of the statute and public policy. The reason for penalizing possession of such a dangerous substance even with a suicide motive makes sense as a matter of public policy because of the extreme dangerousness of biological toxins. While a defendant may intend to kill only him or herself, using a biological weapon to do so may endanger many others. For example, in United States v. Fries, 781 F.3d 1137 (9th Cir. 2015), a defendant prosecuted for violation of the chemical weapons statute used a chlorine gas bomb to attack a particular victim's home. This use of a chemical weapon led to the evacuation and the institution of HAZMAT procedures for an entire residential neighborhood. Id. at 1149. The facts in the subject case demonstrate that the defendant attempted to introduce an extremely dangerous toxin into his workplace and his home. The defendant

accessed what he thought was ricin when his wife and children were present in the home.

The government is not aware of a single legal authority in the country that supports the proposition that possession or attempted possession of ricin in order to commit suicide is a "peaceful purpose" as the term is used in 18 U.S.C. § 175(c). Respectfully, any argument at trial that obtaining ricin for purposes of committing suicide is not a violation of 18 U.S.C. § 175(a) is improper, and the government requests that the Court not permit any such argument at trial.

**IV. CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court preclude argument by defendant Kim at trial that obtaining ricin for purposes of attempted suicide is a defense to the charged crime. The government also respectfully requests that no jury instructions supporting that argument be given as any such instruction would be legally inaccurate. Finally, in order to avoid confusion at trial, in the event that the defense introduces any evidence of thoughts of suicide, or infers that the ricin was purchased for the purpose of the defendant taking his own life, the government respectfully requests an instruction that suicide is not a "peaceful purpose" as defined in 18 U.S.C. § 175(c).