HILARY POTASHNER (Bar No. 167060)
Federal Public Defender
LISA SHINAR LABARRE (Bar No. 246429)
JONATHAN C. AMINOFF (Bar No. 259290)
(E-Mail: Jonathan_Aminoff@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-5374
Facsimile: (213) 894-0310

Attorneys for Defendant
STEVE KIM

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

UNITED STATES OF AMERICA,

Plaintiff,

v.

STEVE KIM,

Defendant.

Case No. 2:18-cr-00901-TJH

**DEFENDANT'S OPPOSITION TO THE GOVERNMENT'S MOTION TO PRECLUDE ARGUMENT AND ANY RELATED JURY INSTRUCTIONS THAT ATTEMPTING TO POSSESS RICIN FOR THE PURPOSE OF COMMITTING SUICIDE IS A DEFENSE TO THE CHARGED OFFENSE**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........ 1
II. PROCEDURAL AND FACTUAL BACKGROUND ........ 2
III. ARGUMENT ........ 2
A. 18 U.S.C. § 175 is intended to criminalize terrorism. It does not criminalize suicide. ........ 2
B. The government cannot infringe on Mr. Kim's right to present a defense. Mr. Kim is entitled to a jury instruction that suicide is a defense to 18 U.S.C. § 175(a). ........ 6
IV. CONCLUSION ........ 8

## I. INTRODUCTION

Defendant Steve Kim opposes the government's motion and respectfully requests that the Court instruct the jury, consistent with Supreme Court and Ninth Circuit precedent, that "use as a weapon" means for "use to injure or harm another person or persons."

It is the government's burden to establish the elements of the offense. In this case, the government must prove, inter alia, that Mr. Kim acquired ricin for use as a weapon. 18 U.S.C. § 175(a). To establish "use as a weapon," the burden is on the government to prove that Mr. Kim did not procure ricin for a prophylactic, protective, bona fide research, or other peaceful purpose. 18 U.S.C. § 175(c). The government seeks an instruction prohibiting Mr. Kim from presenting suicide as a defense to this charge, yet cannot cite to a single precedent where a court either barred a defendant from arguing that suicide is a defense or affirmatively found that suicide constitutes "use as a weapon." The government has thus failed to meet their burden to establish suicide is not a defense.

Contrarily, Mr. Kim offers several authorities for the proposition that suicide is a defense, including Ninth Circuit authority where a jury was specifically instructed that suicide is a defense to this charge. Under the plain reading and intent of the statute, and Supreme Court and Ninth Circuit precedent, Mr. Kim has established that suicide is a defense and he is entitled to a jury instruction establishing that suicide does not constitute "use as a weapon."

If the Court finds that the statute is ambiguous then, consistent with Supreme Court authority, Mr. Kim respectfully requests that the Court adopt the definition of weapon that does not criminalize Mr. Kim's conduct. Alternatively, Mr. Kim requests that the Court dismiss the indictment as the charge is void for vagueness as applied to Mr. Kim.

## II. PROCEDURAL AND FACTUAL BACKGROUND

For purposes of this opposition only, Mr. Kim does not dispute the facts as stated by the government in their motion (dkt. no. 32, hereafter "motion") except to clarify that the audio recording of Mr. Kim's interview with the FBI agents establishes that he clearly and unambiguously stated that he intended to use the ricin to commit suicide and never expressed any thought, desire, ability, or inclination to harm anyone but himself.

## III. ARGUMENT

### A. 18 U.S.C. § 175 is intended to criminalize terrorism. It does not criminalize suicide.

The parties agree that the genesis of 18 U.S.C. § 175 was the Biological Weapons Anti-Terrorism Act of 1989. Motion at 12. The purpose of the act was to implement the Biological Weapons Convention, a treaty signed on to by over 100 nations, and to "protect the United States against the threat of biological terrorism." *Id*.

18 U.S.C. § 175(a) states: "Whoever knowingly develops, produces, stockpiles, transfers, acquires, retains, or possesses any biological agent, toxin, or delivery system for use as a weapon, or knowingly assists a foreign state or any organization to do so, or attempts, threatens, or conspires to do the same, shall be fined under this title or imprisoned for life or any term of years, or both." Section 175(c) provides that: "For purposes of this section, the term 'for use as a weapon' includes the development, production, transfer, acquisition, retention, or possession of any biological agent, toxin, or delivery system for other than prophylactic, protective, bona fide research, or other peaceful purposes."

The government offers a dictionary definition of "weapon" as "a thing designed or used for inflicting bodily harm or physical damage." Motion at 15:8-9. From this, the government extrapolates that suicide constitutes use of a weapon in that the weapon is being used to inflict bodily harm upon oneself. *Id*. at 11-14. However the definition at issue is not simply "weapon" but rather "use as a weapon." In *Bond v. United States*,

the Supreme Court considered the constitutionality of a prosecution under 18 U.S.C. § 229 which criminalizes, inter alia, the knowing use of a chemical weapon. 572 U.S. 844 (2014). In that case, Defendant Bond, after learning that her husband had impregnated her next-door neighbor, created a chemical compound and then used it to burn the neighbor. Bond was convicted of one count of possessing, and one count of using, a chemical weapon. *Id*. at 852. The Supreme Court found it highly unlikely that in passing enacting legislation to enforce a treaty targeting chemical warfare and terrorism, Congress intended to criminalize Bond's revenge plot against an adulterer. *Id*. at 859-60. But more to the point, the Supreme Court found that "use of something as a 'weapon' typically connotes '[a]n instrument of offensive or defensive combat,' or [a]n instrument of attack or defense in combat, as a gun, missile, or sword[.]'" 572 U.S. 844, 861 (2014) (quoting Webster's Third New International Dictionary 2589 (2002) and American Heritage Dictionary 2022 (3d ed. 1992)). Combat is defined as "fighting between armed forces." Oxford Living Dictionaries at https://en.oxforddictionaries.com/definition/combat. The Court then concluded that:

> no speaker in natural parlance would describe Bond's feud-driven act of spreading irritating chemicals on [the neighbor's] door knob and mailbox as "combat." Nor do the other circumstances of Bond's offense—an act of revenge born of romantic jealousy, meant to cause discomfort, that produced nothing more than a minor thumb burn—suggest that a chemical weapon was deployed in Norristown, Pennsylvania.

*Id*. at 862.

The *Bond* decision is instructive for multiple reasons. First, in interpreting the proscribed conduct, it requires a "realistic assessment [] of congressional intent." *Id*. at 862. A realistic assessment of Congress' intent in passing 18 U.S.C. § 175 is certainly not to punish Mr. Kim for attempting suicide. Indeed, had Mr. Kim been successful, there would be no reasonable suggestion that a biological weapon had been deployed in

the Central District of California. Second, if Bond's assault *on her neighbor* did not constitute use of a chemical weapon, then Mr. Kim's intent to harm himself certainly could not constitute use of a biological weapon. Setting aside the issue of "combat," the Supreme Court's definition of "use of a weapon," at minimum, requires the intent to harm another person.

Perhaps more significant, however, is the Ninth Circuit's decision in *United States v. Hughes*, 273 Fed. App'x 587 (9th Cir. 2007). There, the Ninth Circuit affirmed, inter alia, Hughes' conviction for attempted production of a biological toxin (ricin) under 18 U.S.C. § 175(a). At trial, Hughes' jury was instructed that:

> To attempt to produce a toxin with the intent to "use as a weapon" means to attempt to produce a toxin *with the intent to use it to injure or harm another person or persons*. The government does not have to prove an intent to kill another person or persons. Furthermore, intent to use as a weapon does not require the government to prove actual or attempted use of ricin.

*Id*. at 590[1] (emphasis added). During deliberations, the jury inquired as to the "definition of a weapon under law," and the district court responded that "this definition is not an issue in the case. Please refer to the Court's instructions." *Id*. at 590. On appeal, Hughes argued that the trial court erred in telling the jury that the definition was not an issue. *Id*. Although the Ninth Circuit noted that the trial court might have misunderstood the question to concern the phrase "weapon under law" as opposed to just "weapon," the district court's response was not misleading. Moreover, the Ninth Circuit confirmed that the phrase "for use as a weapon" was at issue, and "the jury instruction provided all the information necessary to fully understand that

---

[1] This particular instruction was actually proposed by the Department of Justice. *United States v. Hughes*, D. Ariz Case No. CR 05-759-EHC, Dkt. No. 97 at 3:15-19. The government's contrary position in this case for the purpose of penalizing Mr. Kim is both unjust and inequitable.

phrase[.]" *Id*. The instruction given, and drafted by the government, in *Hughes* is the same instruction that Mr. Kim requests in this case.

Rather than relying on, or attempting to distinguish, these Supreme Court or Ninth Circuit authorities, the Government points to a District of Columbia prosecution, *United States v. Milzman*, CR No. 14-186-KBL, which it believes supports its position that suicide constitutes "use as a weapon" under 18 U.S.C. § 175. This case does not support the government's view. First, Milzman ended in a plea agreement; the issue of whether suicide constitutes a defense was not litigated. And second, the prosecution in that case disputed whether Milzman actually intended to commit suicide and there was no ultimate finding as to his true intention. Dkt. No. 37 at 9-10 (Government's sentencing position paper stating that "Although the Defendant maintains that he intended to use his ricin on himself in an attempt to commit suicide, the record in this case presents a much murkier scenario. … ¶ There is evidence contradicting the Defendant's purported claim of using the ricin for suicide. … ¶ Specifically, when talking with his friend, when the Defendant would not have a reason to give a self-serving statement, the Defendant not only denied intending to use the ricin in a suicide attempt, but he also simply shrugged when directly asked whether he intended to use the ricin on a specific person with whom the Defendant once had a romantic relationship. … Consequently, based on the evidence obtained in this case, the Defendant's intended use of ricin is simply unclear and there is much that calls into question the Defendant's purported suicide claim."), *see also id*. at 14 (similar). Thus *Milzman* is utterly unhelpful in resolving this issue.

The Government also cites to *United States v. Levenderis*, 806 F.3d 390, 395 (6th Cir. 2015) as authority for the position that a defendant who intended to use ricin as part of a suicide plot was validly convicted under 18 U.S.C. § 175. In actuality, however, Levenderis intended much more harm than suicide. Specifically, Defendant Levenderis produced 35.9 grams of ricin, which was enough to kill over 250 people. *Id*. at 393. He told FBI agents that he planned to commit suicide by burning his house

down while he was still inside and using the ricin to keep firefighters from entering his home. *Id*. The Sixth Circuit summarized that "Levenderis intended to use the prohibited substance as part of a suicide plot *and against an unknown number of government workers* (firefighters and first-responders)." *Id*. at 399 (emphasis added). Moreover, the Sixth Circuit noted, Levenderis also "intended to use the ricin to threaten his cousin, with whom he was feuding, from coming to his house. In addition, the FBI learned that defendant also intended to poison his step-father, with whom he had disputes over inheritance and financial matters, by putting ricin in a bowl of soup." *Id*. at 393.

*Levenderis* does not support the government's position that someone who only intended to harm himself comes within § 175(a). In fact, in every § 175 prosecution in which suicide appears to be an issue, the reviewing court is careful to note, as it did in *Levenderis*, that the defendant intended much more than to harm only himself. *See also United States v. Ghane*, 673 F.3d 771 (8th Cir. 2012) (successful § 175(a) prosecution wherein defendant, who possessed enough cyanide to kill 450 people, admits to possession of cyanide with plans to commit suicide *and* killing employees at the corps of engineers).

**B. The government cannot infringe on Mr. Kim's right to present a defense. Mr. Kim is entitled to a jury instruction that suicide is a defense to 18 U.S.C. § 175(a).**

18 U.S.C. § 175 exists to punish acts of terrorism. A suicide attempt which physically harms no one but the individual attempting suicide is by no stretch of the imagination an act of terrorism. The government has not cited to a single authority wherein a defendant was barred from presenting suicide as a defense to a §175 prosecution. In *Chambers v. Mississippi*, the Supreme Court held that the "right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." 410 U.S. 284, 294 (1973). The government's

attempt to deprive Mr. Kim's of his due process and Sixth Amendment rights should be rejected.

In accordance with the plain reading of the statute and the caselaw, Mr. Kim requests that the Court affirmatively instruct the jury, consistent with *Hughes*, that: "To attempt to acquire a biological agent with the intent to 'use as a weapon' means to attempt to acquire a biological agent *with the intent to use it to injure or harm another person or persons*."

"A criminal defendant is entitled to jury instructions related to a defense theory so long as there is 'any foundation in the evidence'" and the instruction is "supported by law." *United States v. Doe*, 705 F.3d 1134, 1144 (9th Cir. 2013) (quoting *United States v. Burt*, 410 F.3d 1100, 1103 (9th Cir. 2005)). There is unquestionably a foundation in the evidence for this instruction, as Mr. Kim informed agents moments after his arrest that his intention in purchasing the ricin was to commit suicide. The instruction is supported by law, specifically *Bond* and *Hughes,* where the Ninth Circuit stated that the requested instruction "provided all the information necessary to fully understand [use as a weapon.]" *Hughes*, 273 Fed. App'x at 590.

To the extent that the Court believes the statute is ambiguous regarding whether suicide constitutes "use as a weapon," the Court should conclude that suicide does not constitute a crime under § 175. *United States v. Universal C. I. T. Credit Corp.*, 344 U.S. 218, 221-222 (1952) ("But when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite. We should not derive criminal outlawry from some ambiguous implication."). Alternatively, the statute is void for vagueness as applied to Mr. Kim.

//

//

//

//

## IV. CONCLUSION

For the foregoing reasons, the government's motion should be denied and Mr. Kim's request for a jury instruction consistent with legal precedent that "use as a weapon" does not include use upon oneself should be granted.

Respectfully submitted,

HILARY POTASHNER
Federal Public Defender

DATED: March 11, 2019

By */s/ Jonathan C. Aminoff*
JONATHAN C. AMINOFF
Deputy Federal Public Defender

Attorneys for Steve Kim