NICOLA T. HANNA
United States Attorney
PATRICK R. FITZGERALD
Assistant United States Attorney
Chief, National Security Division
REEMA M. EL-AMAMY (Cal. Bar No. 237743)
Assistant United States Attorney
Terrorism and Export Crimes Section
1500 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-0552
Facsimile: (213) 894-6436
E-mail: Reema.El-Amamy@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STEVE S. KIM,<br><br>Defendant. | No. CR 18-901-TJH<br><br><u>Opposition to Defendant’s Motion to Dismiss the Indictment</u> |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Reema M. El-Amamy, hereby files its Opposition to Defendant’s Motion to Dismiss the Indictment.

//

//

This government's Opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: April 29, 2019

Respectfully submitted,

NICOLA T. HANNA
United States Attorney

PATRICK R. FITZGERALD
Assistant United States Attorney
Chief, National Security Division

/s/
REEMA M. EL-AMAMY
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**


DESCRIPTION PAGE

MEMORANDUM OF POINTS AND AUTHORITIES....1

I. INTRODUCTION....1

II. STATEMENT OF FACTS....3

III. ARGUMENT....11

A. The Biological Weapons Convention....11

B. 18 U.S.C. § 175 Does Reach the Conduct in this Case....12

C. Defendant Kim's Conduct Was Not a Local Crime....13

D. Defendant Kim's Conduct Falls Within the Biological Weapons Act Even When Construed According to Principles of Federalism....14

IV. CONCLUSION....16

# TABLE OF AUTHORITIES

DESCRIPTION

## CASES

Bond v. United States,
134 S. Ct. 2077 .......................................passim

Smith v. United States,
431 U.S. 291 (1977) ...................................13

United States v. Le,
902 F.3d 104 (2nd Cir. 2018) ..........................passim

## STATUTES

18 U.S.C. § 175.........................................12

18 U.S.C. § 175(a)......................................2, 3, 12

18 U.S.C. § 175(c)......................................12

## REGULATIONS

42 C.F.R. § 73.3........................................3, 15

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

During the Fall of 2018, defendant Kim attempted to buy ricin – a highly lethal poison – in order to kill a 110 pound victim. Defendant Kim, at the time, weighed between 150 and 170 pounds. He attempted to buy the ricin from a hidden service website that is a publicly accessible marketplace and forum. The defendant took great care to hide his identity over this website, while he tried to buy the poison from an international source, using bitcoin, to kill another individual. However, defendant Kim was not aware that the individual from whom he was attempting to buy the poison was an Online Covert Employee ("OCE") with the Federal Bureau of Investigations ("FBI"). During the negotiations, defendant Kim told the OCE that the victim would be drinking the ricin, and asked if the ricin should be in liquid or powder form if defendant Kim planned to place the ricin in the 110 pound victim's drink.

After defendant Kim bought the ricin, the OCE provided defendant Kim with instructions regarding how to access the ricin in the package that the OCE would ship via the United States Postal Service ("USPS") to defendant Kim's work address. The OCE told defendant Kim that the ricin would be hidden in a compartment of a toy vehicle, and gave defendant Kim special instructions regarding how to open the compartment. FBI agents put a vial of substance purporting to be ricin in the compartment of the toy vehicle, and affixed a beeper to the compartment in order to signal to law enforcement when the compartment was opened. A federal search warrant authorized the search of the person or persons who, based on the beeper, opened the compartment containing the vial of substance purporting to be ricin.

On November 29, 2018, law enforcement delivered the package to defendant Kim's work address, at a multi-story office location in Los Angeles. Defendant Kim took the package home that same night, and opened the compartment that contained what he believed to be a deadly toxin. The beeper activated and law enforcement placed defendant Kim under arrest. During a Mirandized interview, defendant Kim admitted to attempting to purchase ricin from the OCE, and that he wanted to purchase enough ricin to kill one person. Defendant Kim also discussed anger issues that he had after he had completed his military service in Iraq, and prior substance abuse issues.

The government will argue at trial that when defendant Kim made contact with the OCE, it was for the purpose of trying to kill a 110 pound victim. The government acknowledges that defendant Kim's wife has the same approximate weight as the intended victim, however, it is entirely possible that defendant Kim intended to kill someone else other than his wife. While purchasing the lethal toxin, defendant Kim did not have any conversations about suicide with the OCE, but rather discussed how the intended victim would be drinking the ricin and whether powder could be concealed in a drink, or if it should "come in liquid." It is without dispute that this conduct constitutes a violation of 18 U.S.C. § 175(a).

The case most analogous to the instant case is United States v. Le, 902 F.3d 104 (2nd Cir. 2018), cert. denied 139 S.Ct. 1274 (2019). There, the defendant also attempted to obtain ricin from an OCE via the internet and the USPS. On appeal, Le argued that the "principles of federalism preclude construing the Biological Weapons Act to reach his criminal conduct, which was intended only to facilitate local murder." Id. at 106. The Court found that "Le's acquisition of

ricin through instrumentalities of interstate commerce is not akin to the purely local assault in Bond and presents no need for [the Court] to construe the Biological Weapons Act according to principles of federalism. Id. at 113. Moreover, "because Congress's enactment of § 175(a) fell within its Commerce Clause authority, Le's constitutional challenge to that statute, both facial and as-applied, fails." Id. at 119-120. Defendant Kim has not even acknowledged the Le case in his arguments to the Court. The government respectfully urges the Court to follow the holding in Le, and reject the defendant's arguments on the same basis.

**II. STATEMENT OF FACTS**

Website #1[1] is a hidden service website that is a publicly accessible marketplace and forum. A username and password is required to access the marketplace and forum for Website #1, but the registration process is open to the public. The marketplace for Website #1 contains numerous subsections advertising the sale of ricin. Ricin is a highly lethal biological toxin, and can be fatal if ingested, inhaled, or injected, even if in small quantities. There is no antidote or cure for ricin poisoning. The Secretary of Health and Human Services has determined that ricin "pose[s] a severe threat to public health and safety" and has placed ricin on the list of select agents and toxins. 42 C.F.R. § 73.3.

On September 29, 2018, an FBI Online Covert Employee ("OCE") posing as an online seller for Website #1 received an unsolicited

[1] The actual name of Website #1 is known to law enforcement. The site remains active, and disclosure of the name of the site would potentially alert users to the fact that law enforcement action is being taken against the site.

message from defendant Kim inquiring about the availability of ricin.[2] At the time, defendant Kim did not believe that he was communicating with law enforcement, but, rather, an individual who was illegally selling ricin over Website #1, potentially from a foreign country. On October 2, 2018, the OCE responded by saying: "I make ricin on demand and to fit specific need? I not ship everywhere. where you need shipped i let you know if it possible. ok?" The same day, defendant responded: "what is the minimum order and how much. i would need it shipped to los angeles."

On October 3, 2018, the OCE responded: "Hollywood you near. very nice. I ship to america before no problem.[3] no min amount friend i make to order for your need. you have . . . account ? More secure so we can work out what amount you need to fix whoever cause you problem. cost near 200 euro plus cost to ship. but depend on need. Maybe less for amount you want. we work out detail." On October 5, 2018, defendant Kim, who sought to conceal his identity while purchasing ricin from Website #1, replied: "i hope i don't offend you but would prefer to transact on this market. would that be ok? what is the typical amount?" On October 8, 2018, the OCE responded:

---

[2] Defendant Kim's unsolicited request for ricin undercuts the defendant's self-serving claim that defendant Kim did not "kn[o]w anything about ricin." See Def. Mot. At 8. Indeed, in his post arrest interview, defendant Kim immediately acknowledged the reason for his arrest was because he attempted to purchase ricin online.

[3] The OCE had obviously not shipped ricin previously through the U.S. mail, and had no intention of mailing a dangerous toxin via the United States Postal Service. The OCE also did not have a contact at the USPS that made it safer to ship ricin. All of these statements, contrary to the defendant's mischaracterization of the undercover activity, were designed to identify and locate defendant Kim and his intended victim. See Def. Mot. at 10. Defendant Kim did not know that he was interacting with an undercover law enforcement officer when he attempted to illicitly obtain ricin using the internet and the USPS.

"we stay on market if you like. Not offend. no typical amount. Last person buy 10mg in solution. Amount you need depend on how you want to give to person and how big person is. You want to make them eat ricin or you want inject?"

After not receiving a response, on October 14, 2018, the OCE asked defendant Kim: "you still want?" On October 15, 2018, the defendant responded: "yes. how much total with shipping to united states?" On October 16, 2018, the OCE responded: "Maybe 300 Euro. Never know real cost to post till I have post code from you. You never say how much ricin you need friend. Like I mention before I make each batch for person. Like I say last customer buy 10mg in suspension. That work perfect for how he want to deliver and **lethal for victim (factored in height/weight)**. Ricin very dangerous and easy use. you want I make then I make for you no problem. But need detail how you want product so I know how much for you to make okay friend. You say how you want use and what form (powder?) **and height/weight of victim so I make best product very lethal for you to us**" (emphasis added).

On October 17, 2018, the defendant replied: "the person would be **50kg/110lbs** . shipping would be to los angeles, postal code 90036" (emphasis added). On this date, the defendant's wife weighed approximately 110 pounds, and, according to current Department of Motor Vehicle records, the defendant's weight was 170 pounds.[4] On October 18, 2018, the OCE replied: "ok that weight not need lot

[4] During his post-arrest statement, defendant Kim stated that he weighed 150 pounds.

ricin to be bad day for person. I can make for you no problem. You know how you want to deliver to person so I know to ship as powder or liquid? You make eat or drink it make difference in dose. You have questions I help ok! I start getting ready to make you order friend." On October 18, 2018, the defendant replied: "**they would be drinking it.** so would that come in liquid? is powder easier to ship? thank you" (emphasis added).

On October 19, 2018, the OCE stated: "as powder you still able to put in drink no problem. It dissolve in liquid and still do job. I ship powder or liquid before no issue, but powder more easy to conceal I think. You want I make it powder?" The same day, defendant Kim replied: "ok. can you tell me how much to ship powder? what is the estimated shipping? should i just place the order through your listing?" On October 19, 2018, the OCE responded: "320 Euro this include shipping and cost for concealment. I make custom listing for you ok. Should be ready in few day. I have make supply run soon." On October 21, 2018, the defendant stated: "OK. please link the listing when complete." On October 23, 2018, the OCE sent the link to purchase the ricin on Website #1.

On October 29, 2018, the OCE stated: "it been days friend and not have word from you. you still need?" On November 1, 2018, defendant Kim replied: "sorry for the delay. i will get you payment by tomorrow, [Friday, November 2, 2018]." On November 6, 2018, the OCE stated: "Hollywood! Your day must be many times longer than my day. HA! It has been many tomorrows here friend. You have troubles?" On November 7, 2018, the defendant replied: "sorry for the delay.

waiting for funds to transfer and will submit payment once i have funds ready. will send as soon as its ready. thank you for your patience." On Saturday, November 10, 2018, defendant Kim stated: "sorry again for the delay. just sent payment." The same day, defendant Kim stated: "Sorry for the delay. Here is the shipping address: Steve Kim 5670 Wilshire Blvd. Floor 24 Los Angeles, CA 90036."

Blockchain[5] analysis of the transaction information associated with Jabber451's purchase of ricin on Website #1 revealed the funds originated from the Bitcoin address ending in "GZuC." The transaction occurring on November 10, 2018 involved approximately 0.05809 Bitcoin being sent from the Bitcoin address ending in "GZuC," which was subsequently followed by the Bitcoin address ending in "GZuC" sending 0.056999 BTC to the payment address associated with Website #1 for the ricin purchase.

On November 13, 2018, the OCE replied: "no worries friend. i work on concealment now and let you know when it ship out. now that you purchase and i see you serious we speak more free. You understand how best use? if not i work with product for many times and have great understanding. you have ricin question you ask ok." On November 14, 2018, defendant Kim replied: "thank you for your patience. how long do you think shipping will take?" On November 14,

[5] The blockchain is a public ledger of all Bitcoin transactions that have ever been executed. It is constantly growing as completed blocks of new transactions are added to it in a linear, chronological order.

2018, the OCE stated: “not take to long friend. My contact at post is on holiday and not able to ship until 19th or 20th. You need before for urgent reason? or is sending then ok. You let me know but it much safe for all to send when contact is back. if you ok with that I will refund shipment cost for troubles. You send me btc [bitcoin] wallet and I send you refund ok.” On November 15, 2018, the defendant replied: “i can wait. thank you for the quick reply.”

On November 20, 2018, despite the fact that defendant Kim purchased the ricin, the sale auto-declined in the cryptocurrency market as the package had not been shipped yet. On November 20, 2018, the OCE told defendant Kim that: “listing auto decline is mistake. i already shipped today! forgot to mark ship on market...you purchase again and i send you tracking number soon. sorry for issue friend.” The OCE also provided the defendant with a link to make a new purchase on Website #1. On Wednesday, November 22, 2018, defendant Kim replied: “It will take time for me to get funds transferred. how fast can you ship it and for me to receive package? My time window is very short now.” On November 23, 2018, the OCE replied: “package ready to ship. since I make mistake I pay for fast shipping no extra cost for you. so you get in a few days after I ship. it not take weeks to get to you this way and you have ricin in time to use.”

On November 23, 2018, defendant Kim stated: “i'm sure you are aware of the recent volatility with bitcoin prices. Will you be able to accept the original amount (0.05699934 BTC) of the listing? if

not, i will need to wait until i can get more funds converted and i'm afraid i'm running out of time. i can send the BTC i have available and send additional funds (~0.014 BTC) if you are willing to ship now. i hope you can trust me as i think i've shown i'm a serious buyer. thank you." On November 24, 2018, the OCE replied: "Yes. Market crazy. I fix price on listing to reflect original amount of btc. you send additional amount to btc wallet after I ship ok. I do this since I made error which cause this issue and I see you are serious buyer." The same day, the defendant stated: "thank you. i just completed the order. i will send additional funds when I have funds ready and when shipping confirmation is sent. sorry don't mean to pester you but just want to make sure this shipment will be expedited since i am on a time constraint now."

On November 24, 2018, the OCE stated: "here are tracking numbers CP967321681UA. might take day are so to show in system. I put rush on shipping like you need. Maybe there Wednesday or Thursday they say. I send you btc wallet address soon so let me know when you have other fund." On November 26, 2018, defendant Kim stated: "thank you. i will message you as soon as funds are ready. what is the shipping method (i.e. DHL, Fedex)?" The same day, the OCE replied: "contact at post say national post deliver through usps in america. Have you check tracking at usps website."

On November 28, 2018, the OCE stated: "Hey friend you have rest fund? I have wallet to send you when ready. Also I tell you of package you order. You find ricin in battery part of toy truck ok.

You need special tool to open battery part ok. I put wrench in bag. Ban on underneath part of truck. Sometime tool is issue. When you get package you try open fast and make sure tool work. If you have problems with tool I send new one right away ok so make time frame you need.”

The same day, the Honorable Karen L. Stevenson authorized an anticipatory search warrant in 18-MJ-03151. The warrant authorized the installation and monitoring, for a period of up to fourteen days, of a Global Positioning System (“GPS”) tracking device (the “tracking device”) placed inside a package (the “subject package”) created and delivered by law enforcement purporting to be a United States Postal Service employee delivered the subject package to defendant Kim’s work address. The subject package contained a toy vehicle. The bottom of the toy vehicle had a battery compartment with a cover secured by a small screw. A vial of substance purporting to be ricin was placed in the battery compartment. There was a switch (the “beeper”) on the battery compartment that notified law enforcement when the battery compartment was opened or closed. The subject package was affixed with an international postal tracking number CP967321681UA, addressed to Steve Kim, at his work address. The warrant authorized the search of the person or persons who, based on the beeper, opened the compartment containing the vial of substance purporting to be ricin.

On November 29, 2018, a law enforcement officer purporting to be a United States Postal Service employee delivered the subject package

to defendant's work address, which was at a large multi-story office building with numerous employees. The defendant took custody of the subject package, and took the subject package to his residence that evening. At approximately 6:48 p.m., the beeper was activated in defendant Kim's residence, and, at approximately 7:15 p.m., law enforcement entered the residence while defendant Kim's wife and two small children were at home. The defendant was identified as the individual who had activated the beeper, and was subsequently placed under arrest. During a Mirandized interview with law enforcement, defendant Kim admitted to purchasing ricin from Website #1, and described marital issues between him and his wife. Defendant Kim also described his own weight as 150 pounds. Finally, defendant Kim discussed anger that he had after he completed his military service in Iraq, prior substance abuse issues, as well as thoughts of suicide.

## III. ARGUMENT

### A. The Biological Weapons Convention.

"In enacting the Biological Weapons Act, Congress identified two purposes: '(1) [to] implement the Biological Weapons Convention, an international agreement unanimously ratified by the United States Senate in 1974 and signed by more than 100 other nations'; and '(2) [to] protect the United States against the threat of biological terrorism.'" United States v. Le, 902 F.3d 104, 109 (2d Cir. 2018) (citations omitted). "The Convention aims to 'exclude completely the possibility' of biological agents and toxins 'being used as weapons' and, toward that end, requires inter alia, that each State signatory,

'in accordance with its constitutional process,' implement 'any necessary measures' to prohibit the proliferation of such weapons within its territorial jurisdiction.'" Id. at 111 (citing Convention on the Prohibition of the Development, production and Stockpiling of Bacteriological (Biological) and Toxic Weapons on their Destruction (the "Biological Weapons Convention") 1015 U.N.T.S. at 164-167.)

The Biological Weapons Act criminalizes certain conduct, including:

> Whoever knowingly develops, produces, stockpiles, transfers, acquires, retains, or possesses any biological agent, toxin, or delivery system for use as a weapon, or knowingly assists a foreign state or any organization to do so, or attempts, threatens, or conspires to do the same, shall be fined under this title or imprisoned for life or any term or years, or both. There is extraterritorial Federal jurisdiction over an offense under this section committed by or against a national of the United States.

18 U.S.C. § 175(a). There is no dispute "ricin, a highly lethal toxic protein naturally found in and extracted from the sees of the castor oil plant, clearly falls within [the definition of biological toxin]." Le, 902 F.3d at 110. "The statute defines the phrase 'for use as a weapon' to 'include[] the development, production, transfer, acquisition, retention, or possession of any biological agent, toxin, or delivery system for other than prophylactic, protective, bona fide research, or other peaceful purpose.'" Id. (quoting 18 U.S.C. § 175(c)). "In effect, this definition presumes that a biological toxin is 'for use as a weapon' unless its use falls within one of the specified permitted purposes." Id.

**B. 18 U.S.C. § 175 Does Reach the Conduct in this Case**

"As the Supreme Court itself recognized, Bond is an 'unusual,' even 'curious' case. Id. (quoting Bond v. United States, 134 S. Ct. 2077, 2090, 2092-93). In Bond, the government applied the Chemical

Weapons Act "to 'a purely local crime: an amateur attempt by a jilted wife to injure her husband's lover' by putting chemical irritants on the victim's door knob, car door, and mail box in the hope of inducing a rash." Le, 902 F.3d at 111 (quoting Bond, 134 S.Ct. at 2092). "The Court noted that the Chemical Weapons Act could not be construed to signal Congress's intent to reach Bond's purely local assault crime." Id. at 112. "In so ruling, the Court was careful to note that an 'exceptional convergence of factors' compelled its decision. It cautioned that 'nothing' in Bond should be read to 'disrupt' federal authority to enforce federal criminal laws 'against assassination, terrorism, [or] acts with the potential to cause mass suffering.'" Id. (quoting Bond, 134 S.Ct. at 2093). Defendant Kim does not acknowledge the Court's express limitation of its holding in Bond, nor the recent Le case that describes the inapplicability of Bond in a factually analogous case.

**C. Defendant Kim's Conduct Was Not a Local Crime**

Defendant Kim's conduct is not simply "a case of attempted domestic violence." See Def. Mot. At 1. "What [Kim] did to violate the Biological Weapons Act was to use the internet, routinely recognized . . . as an instrumentality of interstate commerce . . . to locate, negotiate for, and purchase ricin [illicitly]. Then, when he had done so, [Kim] fraudulently used another interstate instrumentality, the United States Postal Service, as the means to receive the lethal toxin." Le, 902 F.3d at 112. "Maintaining the integrity of the Postal Service is certainly a 'matter of particular federal concern.'" Id. (quoting Smith v. United States, 431 U.S. 291, 304 n. 10 (1977)). "The Constitution itself grants Congress the power to enact all laws it deems necessary and proper to execute its

power to establish post offices, a power that extends to criminal regulations." Id. (citations omitted). "Thus [defendant Kim's] attempted acquisition of ricin through the fraudulent use of the Postal Service is no purely local crime." Id. at 112.

"Regulating the instrumentalities of interstate commerce is also a matter of strong federal interest . . . one not traditionally left principally to the States." Le, 902 F.3d at 113. "[T]he internet 'does not recognize geographic boundaries,' thus, a state cannot easily regulate its activities 'without projecting its legislation into other States,' raising constitutional concerns under the dormant Commerce Clause." Id. (citations omitted). "[C]rimes conducted over the internet – such as [defendant Kim's] attempt to acquire ricin . . . – cannot reasonably be viewed as purely local matters." Id. Moreover, he attempted to purchase this lethal toxin using bitcoin – a decentralized cryptocurrency and form of electronic cash, have it delivered internationally via USPS to a multi-story office building in Los Angeles. "There is an undoubted federal interest in the use of interstate instrumentalities to acquire the means to commit murder, even if the murder itself if purely local." Id.

**D. Defendant Kim's Conduct Falls Within the Biological Weapons Act Even When Construed According to Principles of Federalism**

"[A]pplying federalism principles of construction to the Biological Weapons Act affords [defendant Kim] no relief." Le, 902 F.3d at 113. "The type of biological toxin at issue, ricin, is 'extremely deadly,' . . . even in small doses. Id. at 114 (citations omitted). "Ricin's deadliness is compounded, moreover, by the fact that it has no known antidote." Id. "This contrasts sharply with the chemicals in Bond, which were more likely to be irritating than

lethal, and whose harmfulness could be mitigated by rising with water. Id. (citing Bond, 134 S.Ct. at 2085). "[R]icin is listed in Schedule I of the Convention's Annex on Chemicals as a 'high risk' substance." Id. "[T]he Secretary of Health and Human Services has designated ricin as a 'select . . . toxin' having 'the potential to pose a severe threat to public health and safety,' which means that its possession or use for any purpose is strictly regulated." Id. (citing 42 C.F.R. § 73.3; §§ 73.7-73.19 (requiring persons seeking to possess, use, or transfer any select toxin, inter alia, to submit to governmental risk assessment, to obtain certificate of registration from agency, to develop for agency approval written security plan for safeguarding toxin, and to submit to unannounced inspections)). As such, ricin is "the type of toxin normally understood as a 'biological weapon' and, thus, subject to federal law." Id. Moreover, "[w]here, as here, the type of toxin at issue is particularly deadly, serves no other purpose than to kill, and 'pose[s] a severe threat to public health . . . may, by itself, carry sufficient weight to have ricin fall within the natural meaning of a biological weapon." Le, 902 F.3d at 115 (citations omitted).

Moreover, § 175(a) "regulates quintessentially economic activity: the development, acquisition, and retention of biological toxins, fungible commodities for which an interstate market exists." Le, 902 F.3d at 119 (citation omitted). "That the provision regulates 'an unlawful market . . . is of no constitutional import,' as it is well-settled that Congress has the 'power to prohibit commerce in a particular commodity.'" Id. (citation omitted). "Accordingly, § 175(a) plainly falls within Congress's Commerce

Clause authority, thus defeating [a] facial challenge to the statute." Id.

The same conclusion should respectfully be reached as to defendant Kim's "as-applied challenge because the conduct supporting his conviction was undeniably commercial." Le, 902 F.3d at 119. Defendant Kim attempted to obtain a highly toxic substance over the internet. He "knowingly employed an instrumentality of interstate commerce, the internet, first to locate a ricin supplier, and, then, to order and pay for the toxin." Id. "Also, he arranged for his ricin order to be delivered to him through another instrumentality of interstate commerce, the United States Postal Service." Id. "These activities, informing both the supply and demand sides of the market for biological toxins, are plainly within Congress's Commerce Clause authority to proscribe." Id. (citation omitted). "The conclusion is particularly apt here where . . . the relationship between the proscribed trafficking in a dangerous commodity and commerce is evident." Id. "[B]ecause Congress's enactment of § 175(a) fell within its Commerce Clause authority, [a] constitutional challenge to that statute, both facial and as-apllied, fails." Id. 119-120; Missouri v. Holland, 252 U.S. 432 (1920).

## IV. CONCLUSION

For the foregoing reason432s, the government respectfully requests that this Court deny the defendant's Motion to Dismiss the Indictment.