HILARY POTASHNER (Bar No. 167060)
Federal Public Defender
LISA SHINAR LABARRE (Bar No. 246429)
(E-Mail: Lisa_LaBarre@fd.org)
JONATHAN C. AMINOFF (Bar No. 259290)
(E-Mail: Jonathan_Aminoff@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-5374
Facsimile: (213) 894-0310

Attorneys for Defendant
STEVE KIM

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

UNITED STATES OF AMERICA,

Plaintiff,

v.

STEVE KIM,

Defendant.

Case No. 2:18-cr-00901-TJH

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 1

II. STATEMENT OF FACTS .......... 1

III. ARGUMENT .......... 2

A. The Government's Erroneous Analysis of Mr. Kim's Conduct and Interpretation of His Actions As Non-Purely Local .......... 3

B. Mr. Kim's Actions Do Not Fall Within the Scope of Section 175 .......... 7

IV. CONCLUSION .......... 9

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Bond v. United States*,
572 U.S. 844 (2014)....................*passim*

*Gonzalez v. Raich*,
545 U.S. 1 (2005).................... 5

*Griffin v. Oceanic Contractors, Inc.*,
458 U.S. 564 (1982).................... 5

*Johnson v. United States*,
520 U.S. 461 (1997).................... 4

*Scarborough v. United States*,
431 U.S. 563 (1977).................... 5

*United States v. Chamberlain*,
2016 WL 624940 (N.D. Cal. Feb 10, 2016).................... 2, 8, 9

*United States v. Hale*,
762 F.3d 1214 (10th Cir. 2014).................... 2, 8

*United States v. Le*,
902 F.3d 104 (2nd Cir. 2018).................... 1, 2, 5

*United States v. Levenderis*,
806 F.3d 390 (6th Cir. 2015).................... 2, 7

*United States v. Sager*,
227 F.3d 1138 (9th Cir. 2000).................... 4

*United States v. Varela*,
993 F.2d 686 (9th Cir. 1993).................... 4

**Federal Statutes**

18 U.S.C. § 175....................*passim*

18 U.S.C. § 1028.................... 3

18 U.S.C. § 1342.................... 3

## I. INTRODUCTION

This is not a case involving terrorism, an assassination, or an act with the potential to cause mass suffering. Yet the Government attempts to use a statute designed to protect against the threat of biological terrorism to punish Steve Kim for an act of attempted domestic violence. The Government's arguments have already been largely rejected by the Supreme Court's decision in *Bond v. United States*, 572 U.S. 844 (2014), and their latest attempt to save their Indictment by relying on the Second Circuit's outlier decision in *United States v. Le*, 902 F.3d 104 (2nd Cir. 2018), is unpersuasive. Whether the Court finds that Section 175 does not reach Mr. Kim's conduct, or the Court concludes Section 175 is unconstitutional as applied to Mr. Kim, the Indictment in this case should be dismissed.

## II. STATEMENT OF FACTS

The Government takes several liberties with the facts of this case. The Government contends that Mr. Kim "took great care to hide his identity" when attempting to purchase ricin. Opposition at 1, *see also id*. at 4 ("defendant Kim, who sought to conceal his identity while purchasing ricin from Website #1…."). However, the truth, as the Government acknowledges, is that Mr. Kim used his real name and business address to receive the fake ricin. Opposition at 7:7-8.

The Government claims that Mr. Kim "tried to buy the poison from an international source…." *Id*. at 1. In actuality Mr. Kim attempted to buy ricin from someone on the dark web, the location of the seller was never known to Mr. Kim. Indeed, later in its Opposition, the Government acknowledges that Mr. Kim communicated with someone selling ricin over the dark web "*potentially* from a foreign country." *Id*. at 4 (emphasis).

The Government has offered no evidence that Mr. Kim knew anything about ricin except what the FBI agent told him: that ricin was poisonous. Yet the Government criticizes Mr. Kim's objective review of the evidence as a "self-serving claim that defendant Kim did not 'kn[o]w anything about ricin.'" *Id*. at 4 n.2 (quoting

Motion at 8[1]). Yet despite the Government's critique, the Government points to no evidence indicating that Mr. Kim knew anything about ricin, specifically how dangerous it allegedly is, that it is apparently undetectable, or anything else. This is contrasted with *United States v. Le* in which the defendant sought the undercover FBI agent's expertise regarding "how death would end up looking … under forensic examination" and confirming that ricin had no known antidote and did not appear in autopsies. 902 F.3d 104, 107 (2d Cir. 2018).

## III. ARGUMENT

Before responding to the specifics of the Government's Opposition, it is worth noting the issues that the Opposition does not address.

- The Government does not claim that Mr. Kim committed, or intended to commit, an assassination, an act of terrorism, or an action with the potential to cause mass harm;
- The Government does not cite or attempt to distinguish any of the authorities cited by Mr. Kim in his Motion including *United States v. Levenderis*, 806 F.3d 390 (6th Cir. 2015), *United States v. Hale*, 762 F.3d 1214 (10th Cir. 2014); or *United States v. Chamberlain*, 2016 WL 624940 (N.D. Cal. Feb 10, 2016);
- The Government does not dispute that *Bond*'s 3-step analysis with respect to Section 229 applies with equal force to Section 175;
- The Government does not oppose Mr. Kim's request for a jury instruction to establish jurisdiction.

Rather, the sum total of the Government's Opposition is that the Court should follow *United States v. Le*, 902 F.3d 104 (2d Cir. 2018). *Le* should not govern the Court's analysis because it is an outlier opinion in which the Second Circuit misapplied

---

[1] The Government's quotation is misleading. What Mr. Kim actually wrote was that "there is no evidence to indicate that Mr. Kim knew anything about ricin aside from the fact that it can, in high enough doses, be lethal." Motion at 8-9.

the *United States v Bond,* 572 U.S. 844 (2014) analysis. Ultimately, however, the Second Circuit concluded that Le's actions — attempting to be a middleman selling ricin-containing "murder pills" to clients interested in committing murder — were akin to terrorism with the potential of causing mass suffering.

**A. The Government's Erroneous Analysis of Mr. Kim's Conduct and Interpretation of His Actions As Non-Purely Local**

The Government claims that Mr. Kim "does not acknowledge the Court's express limitation of its holding in *Bond*, nor the recent *Le* case that describes the inapplicability of *Bond* in a factually analogous case." Opposition at 13:13-15. The "express limitation" of *Bond* is that it should not be read "to 'disrupt' federal authority to enforce federal criminal laws 'against assassination, terrorism, [or] acts with the potential to cause mass suffering.'" Opposition at 13:9-12 (quoting *Le*, 902 F.3d at 112 and *Bond*, 572 U.S. at 864). This contention is rather curious given that Mr. Kim argued at length in his Motion that because his actions "do not constitute terrorism, an assassination, or an action with the potential to cause mass suffering, his actions do not come within the proscribed territory of 18 U.S.C. § 175." Motion at 11:6-7. Indeed, the Government does not argue in its Opposition that Mr. Kim's actions constitute terrorism, an assassination, or an action with the potential to cause mass suffering. This omission, and implied concession, is fatal to the Government's case.

The Government's contention that *Le* is a factually analogous case is a profound misreading of *Le*. Le was convicted of attempting to acquire ricin in violation of 18 U.S.C. § 175(a), using a false name to conduct unlawful activity by means of the post office in violation of 18 U.S.C. § 1342, and aggravated identity theft in violation of 18 U.S.C. § 1028A. Le was a self-proclaimed broker who acted on behalf of persons interested in acquiring ricin. *Id*. at 107. Le's plan was to develop a risk-free system of murder for sale whereby a single ricin pill could be added to a bottle of "normal pills" that looked identical such that when the intended victim took his medication every day, eventually he would take the ricin pill disguised therein and die. *Id*. at 107-108. Using

multiple online monikers, Le communicated with an undercover FBI agent masquerading as a seller of ricin on the dark web and ordered a bottle of vitamin pills with one ricin pill contained therein, and some "extra loose powder/liquid ricin" sufficient to kill some "small animals" so he could "test something out." *Id*. at 108. Le instructed the agent to deliver the ricin by mail to "Daniel Chunn" at a Manhattan address that turned out to be a post office box at a UPS store rented by Le. *Id*. at 108. Daniel Chunn was a Texas resident who had previously lost his wallet and reported identity theft. He had never been to New York and had no association with Le. FBI agents observed as Le picked up the package from the post office box and followed him to his home where he was arrested. In addition to recovering the sham ricin pill and loose ricin powder, agents discovered castor beans[2] in Le's home. Le was convicted of attempting to acquire ricin, and then using a false name (Daniel Chunn) to conduct unlawful activity by means of the U.S. post office, and aggravated identity theft (Daniel Chunn).

Initially, it should be noted that the Second Circuit analyzed Le's claim under plain error review because Le had failed to raise the *Bond* issue prior to trial and raised it in the first instance on appeal. *Id*. at 109. Thus for Le to have won his appeal, he was required to show that the *Bond* error in his case was so obvious that the trial court should have noted it itself without needing Le to raise the issue. *Johnson v. United States*, 520 U.S. 461, 464 (1997). Plain error is a "highly deferential standard," *United States v. Sager*, 227 F.3d 1138, 1145 (9th Cir. 2000), which will only be met in "exceptional circumstances." *United States v. Varela*, 993 F.2d 686, 688 (9th Cir. 1993). Because the plain error standard is not applicable to this Court's analysis, *Le* has limited value in guiding this Court's ruling on Mr. Kim's motion.

The Government argues that *Le* establishes that Mr. Kim's crime was not a purely local crime for two reasons. First, the Government contends that Mr. Kim's use of the

---

[2] Ricin is made from castor beans.

internet to purchase the ricin renders this a non-purely local crime. The Government fails to note, however, that Bond also purchased a portion of the toxic chemicals at issue in that case over the internet. *Bond*, 572 U.S. at 852. The *Le* court attempts to distinguish Le's internet purchase from Bond's purchase by arguing that Bond was only convicted of "possession" and "use" of chemical weapons, and thus the internet purchase was not at issue. Le, on the other hand, was convicted of "acquisition" of biological weapons. *Le*, 902 F.3d at 113. This is a distinction with no significance. Had use of the internet been a valid consideration, the Supreme Court would have upheld Bond's possession conviction on the basis that the chemicals traveled in interstate commerce[3] in the same way that the Court has allowed the federal government to prosecute felons who *possess* firearms, if those firearms have traveled in interstate commerce. *Scarborough v. United States*, 431 U.S. 563 (1977). Indeed, the Supreme Court has found in numerous instances that a purely local possession crime is validly regulated by the federal government if the item possessed traveled in or affected interstate commerce. *See, e.g., Gonzalez v. Raich*, 545 U.S. 1 (2005) (finding that possession of marijuana in a purely local sense was still validly regulated by Congress because of its substantial effect on interstate commerce). In *Bond*, however, the Court did not allow the origin of the chemical to support the conviction, instead the Court focused on the purpose of Section 229 and the Government's interest in prosecuting terrorism, assassinations, and acts with the potential to cause mass harm.

Further, because the Second Circuit's hair-splitting analysis would lead to absurd results, their interpretation of *Bond* should not be followed. *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the

---

[3] The *Bond* Court found that the Government had waived interstate commerce as a basis for jurisdiction in response to Bond's Tenth Amendment argument. *Bond*, 572 U.S. 854-55. The Government was not precluded, however, from arguing that interstate commerce rendered the crime non-local. Indeed, the *Le* court did not find that this argument was waived for purposes of the local crime analysis. *Le*, 902 F.3d at 113.

legislative purpose are available."). Under the Second Circuit's analysis, Bond was guilty of acquiring a chemical weapon when she placed the order for the chemicals over the internet, but not of possession once she actually received those chemicals via U.S. mail or of use of those same chemicals when she attacked her neighbor. This result is totally inconsistent with the Court's analysis in *Bond*.

Second, the Government contends that after Mr. Kim purchased the ricin, he "fraudulently used another interstate instrumentality, the United States Postal Service, as the means to receive the lethal toxin." Opposition at 13:22-24 (quoting *Le*, 902 F.3d at 112); *see also* Opposition at 14:2-4 ("Thus [defendant Kim's] attempted acquisition of ricin through the fraudulent use of the Postal Service is no purely local crime." (quoting *Le*, 902 F.3d at 112)). However, the Government's argument underscores its misreading of *Le*. The language the Government quotes from *Le* regarding fraudulent use of the postal service is a reference to Le's identity theft crimes, *i.e.* using the name Daniel Chunn to receive the ricin in the mail. Unlike Le, Mr. Kim has not been charged with using a false name to conduct unlawful activity by means of the post office nor with aggravated identity theft. In fact, the sham ricin was delivered to Mr. Kim in his true name at his true work address. Thus the Government's argument concerning the fraudulent use of the postal service are totally inapplicable to this case and *Le* is distinguished on this basis.

The *Le* court focuses on traditional realms of federal jurisdiction, but jurisdiction is not the issue in the analysis of whether Le's actions fall within Section 175. As the Supreme Court made clear: the issue is whether a biological agent *was used as a weapon*. If these traditional jurisdictional routes were relevant to the analysis, and regulation of the mail was a guiding principle to render a crime non-local, the Supreme Court would have stated as much in *Bond* where it had a golden opportunity given that Bond actually placed the chemicals on her victim's mailbox and also stole her mail. *Id*. at 852. Instead, the Court properly focused on the chemicals at issue and how they were used. *Id*. at 864. Such is the analysis that this Court should also apply.

**B. Mr. Kim's Actions Do Not Fall Within the Scope of Section 175**

The *Le* decision creates a false narrative in terms of the chemicals at issue in *Bond* and ricin. The Government relies on this false premise when quoting to *Le* and arguing that ricin is "extremely deadly" and this "contrasts sharply with the chemicals in *Bond*, which were more likely to be irritating than lethal, and whose harmfulness could be mitigated by ri[n]sing with water." Opposition at 14-15. In actuality, the chemicals at issue in *Bond* were also extremely deadly. The Bond defendant used two chemicals: 10-chlorophenoxarsine (an arsenic-based compound) and potassium dichromate. *Bond*, 572 U.S. at 852. One-half of a teaspoon of 10-chlorophenoxarsine may be lethal orally to an adult, while a few ingested crystals could kill a child.[4] Moreover, one to one-and-one-half teaspoons may be lethal to the touch. *Bond v. United States*, Case No. 12-158, Brief for the United States of America, at 4. Further, in 1946, the National Defense Research Committee examined 10-chlorophenoxarsine as a candidate chemical warfare agent. *Id*. The other chemical, potassium dichromate, is lethal in even smaller quantities. It is extremely destructive to tissues of the mucous membranes and upper respiratory tract. It can cause ulceration and perforation of the nasal septum and pulmonary edema. Any skin contact may cause redness, pain, and severe burn, and if exposed to broken skin it may cause ulcers (chrome sores) and absorption, which may cause systemic poisoning, affecting kidney and liver functions. *Id*. Thus the Second Circuit's analysis, and the Government's argument, that ricin is uniquely dangerous such that it should avoid the 3-factor test of *Bond* (the type of chemical used and the circumstances in which they were used) is thus based on a false premise and should not guide this Court's analysis. It should also be noted that no other court has adopted *Le*'s analysis that ricin is so dangerous that it somehow avoids the 3-step *Bond* analysis. In fact, even in ricin cases, courts have applied *Bond*'s analysis. *See, e.g., United States v. Levenderis*, 806 F.3d 390

[4] On several occasions when Bond attempted to attack her victim, the victim was accompanied by her young daughter. *Bond v. United States*, Case No. 12-158, Brief for the United States of America, at 5,

(6th Cir. 2015), *United States v. Hale*, 762 F.3d 1214 (10th Cir. 2014); or *United States v. Chamberlain*, 2016 WL 624940 (N.D. Cal. Feb 10, 2016).

Conspicuously absent from the Government's lengthy summation and quotations from the *Le* case is the Second Circuit's conclusion that Le's intended use of the ricin separated his crimes from a purely local matter, and fell within the "core concerns" of the Biological Weapons Act. *Id*. at 115. Specifically, Le's intent was to establish a ricin distribution network whereby he would sell to any number of "clients" a foolproof method to commit, and get away with, murder through the use of a ricin pill. *Id*. at 115. The Second Circuit concluded that Le "would have to know that among the buyers lining up for his simple and easy death pills" would be persons intent on committing acts of terrorism and assassinations plots. *Id*. at 116. And thus despite the Second Circuit's convoluted path in arriving at this conclusion, it ultimately found that Le's actions met the 3-step analysis laid out in *Bond*.

This Court must decide whether Mr. Kim's attempted purchase of ricin for the purpose of harming a single 110-pound victim falls within the confines of Section 175. To make this determination, the Court must decide if: (1) ricin is the type of biological agent that would be associated with biological warfare; (2) Mr. Kim intended to use the ricin as a biological weapon as opposed to simply harming someone with ricin; and (3) the circumstances of Mr. Kim's actions are akin to terrorism, an assassination, or an act with the potential to cause mass suffering. Even if ricin meets step-1 of the analysis, Mr. Kim's actions meet neither step 2 or 3, and therefore his actions do not fall within Section 175. With respect to step 2, the key question is whether Mr. Kim's actions, if completed, would have looked like a biological weapon attack. Just as the Court concluded in *Bond*, a purely local domestic dispute would not lead to the conclusion that a biological agent was deployed in the Central District of California. *Id*. at 861. And with respect to step 3, Mr. Kim's actions were certainly not terroristic in nature nor akin to an assassination, and the Government does not argue to the contrary. Moreover, given the small amount of ricin Mr. Kim attempted to purchase, it was

impossible for his actions to have caused mass suffering, and the Government does not argue to the contrary. Consequently, Mr. Kim's actions plainly do not fall within Section 175.

## IV. CONCLUSION

For the foregoing reason, Mr. Kim respectfully requests that the Court dismiss the Indictment because Section 175 does not reach Mr. Kim's alleged conduct, or Section 175 is unconstitutional as applied to Mr. Kim.

If the Court decides that the Indictment survives this motion, Mr. Kim renews his request for a jury instruction consistent with *Chamberlain*.

Respectfully submitted,

HILARY POTASHNER
Federal Public Defender

DATED: May 6, 2019

By */s/ Jonathan C. Aminoff*
JONATHAN C. AMINOFF
Deputy Federal Public Defender

Attorneys for Steve Kim