HILARY POTASHNER
Federal Public Defender
LISA SHINAR LABARRE (Bar No. 246429)
(E-Mail: Lisa_LaBarre@fd.org)
JONATHAN C. AMINOFF (Bar No. 235819)
(E-Mail: Jonathan_Aminoff@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-5374
Facsimile: (213) 894-0310

Attorneys for Defendant
STEVE KIM

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>STEVE KIM,<br>Defendant. | Case No. 2:18-cr-00901-TJH<br><br>**MOTION TO DISMISS FIRST SUPERSEDING INDICTMENT**<br><br>**Date: August 19, 2019**<br>**Time: 10;00 a.m.**<br>**Courtroom: 9B** |

Defendant Steve Kim, by his undersigned attorneys, will and hereby does move for an order dismissing the First Superseding Indictment (dkt. no. 57) filed on June 6, 2019.

The motion is based upon the attached memorandum of points and authorities, all files and records in this case, and any further evidence and argument as may be presented before this Court on the motion.

Respectfully submitted,

HILARY POTASHNER
Federal Public Defender

DATED: July 22, 2019 By *\/s/ Jonathan C. Aminoff*

JONATHAN C. AMINOFF
Deputy Federal Public Defender

Attorneys for Steve Kim

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

I. INTRODUCTION ..... 1

II. RELEVANT FACTS ..... 1

III. ARGUMENT ..... 2

A. Section 229 Does Not Reach Mr. Kim's Conduct ..... 2

1. The Supreme Court's Decision in *United States v. Bond* ..... 2

2. Section 229 Cannot Be Used to Prosecute Purely Local Assaults Unless Those Assaults Involve Terrorism, Assassinations, or Acts with the Potential to Cause Mass Harm ..... 4

3. Use of the Internet and the U.S. Mail Do Not Change the Character of a Purely Local Assault ..... 6

B. If Section 229 Does Reach Mr. Kim's Purely Local Conduct, Then Section 229 is Unconstitutional As Applied to Mr. Kim ..... 8

1. Congress Does Not Have the Power to Make Every Malicious Use of a Chemical Agent a Federal Crime ..... 9

IV. CONCLUSION ..... 12

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Atlantic Coast Line R. Co. v. Powe*,
283 U.S. 401 (1931) ........ 6

*Bond v. United States*,
564 U.S. 211 (2011) ........ 7

*Cohens v. Virginia*,
264, 5 L. Ed. 257 (1821) ........ 10

*Darr v. Burford*,
339 U.S. 200 (1950) ........ 6

*Jones v. United States*,
529 U.S. 848 (2000) ........ 10

*McCulloch v. Maryland*,
4 L. Ed. 579 (1819) ........ 9

*Missouri v. Holland*,
252 U.S. 416 (1920) ........ 7

*Montana v. Engelhoff*,
518 U.S. 37 (1996) ........ 9

*United States v. Bass*,
404 U.S. 336 (1971) ........ 3, 10

*United States v. Bond*,
572 U.S. 844 (2014) ........ *passim*

*United States v. Bond*,
681 F.3d 149 (3d Cir. 2012) ........ 7

*United States v. Ferreira*,
275 F.3d 1020 (11th Cir. 2001) ........ 8

*United States v. Fox*,
95 U.S. 670 (1878) ........ 10

*United States v. Fries*,
2012 WL 689157 (D. Ariz. Feb. 28, 2012) ........ 5

## TABLE OF AUTHORITIES

Page(s)

*United States v. Fries*,
781 F.3d 1137 (9th Cir. 2015) ........ 6, 8

*United States v. Ghane*,
673 F.3d 771 (8th Cir. 2012) ........ 5

*United States v. Krar*,
134 Fed. Appx. 662 (5th Cir. 2005) ........ 5

*United States v. Le*,
902 F.3d 104 (2d Cir. 2018) ........ 2, 6

*United States v. Lopez*,
514 U.S. 549 (1995)........ 9

*United States v. Michell*,
2018 WL 2688803 (D. Ariz. June 5, 2018)........ 6

*United States v. Morrison*,
529 U.S. 598 (2000)........ 9

**Federal Statutes**

18 U.S.C. § 175........ 2

18 U.S.C.§ 229........ *passim*

Chemical Weapons Implementation Act of 1998........ 1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On March 19, 2019, Defendant Steve Kim moved to dismiss the then-operative single-count indictment charging him with violating 18 U.S.C. § 175(a). Dkt. 37. After the parties fully briefed the issues, Dkt. 44, 46, and the Court heard oral argument on the motion, Dkt. 55, the Government filed a first superseding indictment on June 6, 2019. Dkt. 57. Five days later, on June 11, 2019, the Court summarily denied Mr. Kim's motion to dismiss the now-moot original indictment. Dkt. 61.

By its first-superseding indictment, Dkt. 57, the Government is now charging Mr. Kim with one count of violating 18 U.S.C. § 175(a), to wit, knowingly attempting to procure a biological agent (ricin) for use as a weapon; and one count of violating 18 U.S.C. § 229(a), to wit, knowingly attempting to procure a chemical agent (potassium cyanide) for use as a weapon. *Id*.

By this motion, Mr. Kim hereby moves to dismiss the first superseding indictment in its entirety. With respect to count one, to the extent the Court denied Mr. Kim's prior motion to dismiss as moot, Mr. Kim re-raises his motion to dismiss and incorporates by reference the arguments previously raised in his motion, the reply in support thereof, and at the oral argument. Mr. Kim moves to dismiss count two because Section 229(a) does not reach his purely local conduct or, in the alternative, Mr. Kim moves to dismiss as Section 229(a) is unconstitutional as applied to him.

## II. RELEVANT FACTS

During his custodial interrogation, in response to FBI questioning, Mr. Kim told FBI agents that he had previously tried to purchase cyanide over the Internet and provided the agents with his relevant login information and passwords. Dkt. 54. After seizing and searching Mr. Kim's personal iPhone, iPad, and laptop computer, FBI agents confirmed that, on October 10, 2018, Mr. Kim attempted to purchase 5 grams of potassium cyanide powder. The Government's searches have also apparently

confirmed what Mr. Kim told agents, specifically that he was scammed by the seller and never actually received the cyanide.

## III. ARGUMENT

The Chemical Weapons Convention ("CWC") is an international arms-control agreement established to reinforce the 1924 Geneva Protocol prohibiting chemical warfare by outlawing the production, stockpiling, and use of chemical weapons. Its objective is to "achiev[e] effective progress towards general and complete disarmament … including the prohibition and elimination of all types of weapons of mass destruction." Conv. Preamble. Like the Biological Weapons Convention ("BWC"), *see* dkt. 37 at 2-3, the CWC is not a self-executing treaty, and thus required enacting legislation. The U.S. Senate ratified the CWC in April 1997 and enacted the Chemical Weapons Implementation Act of 1998, codified at 18 U.S.C. § 229 et seq. 18 U.S.C. § 229(a) states that it is unlawful for any person knowingly "to develop, produce, otherwise acquire, transfer directly or indirectly, receive, stockpile, retain, own, possess, or use, or threaten to use, any chemical weapon."

### A. Section 229 Does Not Reach Mr. Kim's Conduct

#### 1. The Supreme Court's Decision in *United States v. Bond*

In *United States v. Bond*, 572 U.S. 844 (2014), the Supreme Court held that a "purely local" crime did not come within the confines of Section 229. There, defendant Bond purchased potentially lethal chemicals over the internet, had them shipped to her home via U.S. mail, and then repeatedly placed them (in combination with other chemicals that she had stolen from her work) on her neighbor's home, car, and mailbox with the intent of chemically burning her neighbor. 572 U.S. at 852. Following her convictions for possessing, and using, a chemical weapon in violation of 18 U.S.C. § 229(a), Bond appealed her convictions arguing that Section 229 does not reach her conduct or, alternatively, if Section 229 reaches her conduct, then Section 229 exceeds Congress' authority under the Tenth Amendment. *Id*. at 853.

The Supreme Court did not reach Bond's constitutional claim, but focused instead on whether Bond's conduct was validly punished under § 229. *Id*. at 856. The government's argument in *Bond* was simple: Bond knowingly used a chemical weapon, as defined by the statute, when placing the chemicals on her neighbor's property in an attempt to assault her neighbor, which was not a peaceful purpose. *Id*. at 856-57. The problem with this interpretation, according to the Court, was "that it would 'dramatically intrude[ ] upon traditional state criminal jurisdiction,' and we avoid reading statutes to have such reach in the absence of a clear indication that they do." *Id*. at 857 (quoting *United States v. Bass*, 404 U.S. 336, 350 (1971)). The Court noted that it is appropriate to apply principles of federalism to resolve ambiguity in a statute, and that Section 229 required such application because of the ambiguity derived from the broad reach of the term "chemical weapon," the consequences of adopting such a broad definition, and the lack of an apparent need to adopt such a broad definition. As such, the Court required a clear indication from Congress that the statute was intended to reach purely local crimes before the Court would interpret the statute's language in a way that infringes on the police power reserved to the States. *Id*. at 860.

With respect to the term "chemical weapon," notwithstanding the definition provided in the statute,[1] the Court stated that the natural meaning considers both the chemicals the defendant used and the circumstances in which she used them. *Id*. at 861. The Court found that the particular chemicals at issue were not the sort that an ordinary person would associate with chemical warfare. *Id*. And, relying on a definition of "weapon" as an "instrument of offensive or defensive combat" the Court found that Bond's action could not be described as combat. *Id*. Indeed, the Court drew a distinction between stating that someone "used a chemical weapon" and saying that someone "used a chemical in a way that caused some harm." *Id*. at 860. The Court explained that if Bond had used the exact same chemicals to poison the city's water

[1] The statute defines a "chemical weapon" generally as "a toxic chemical and its precursors…." 18 U.S.C. § 229F(1)(A).

supply, then the chemicals might be considered "chemical weapons," but applying that same usage to Bond's actions would give the statute a reach exceeding the ordinary meaning of the words used by Congress in drafting Section 229. *Id*. at 861. The Court drew further distinction between Bond's "common law assault" and cases involving "terrorist plots or the possession of extremely dangerous substances with the potential to cause severe harm to many people." *Id*. at 864. The Court found that while the federal government had an interest in enforcing criminal laws against assassinations, terrorism, and acts with the potential to cause mass suffering, the cases of simple, purely local assaults were constitutionally left to the States. *Id*. at 863-64. Thus, the Court concluded, Bond's actions, while wrong, were not punishable under Section 229.

### 2. Section 229 Cannot Be Used to Prosecute Purely Local Assaults Unless Those Assaults Involve Terrorism, Assassinations, or Acts with the Potential to Cause Mass Harm

Similar to *Bond,* Mr. Kim allegedly attempted to order chemicals over the internet and have them shipped to his office for purposes of committing a purely local assault. Therefore the question for the Court is whether Mr. Kim intended the chemicals for use in an assassination plot, terrorism, or an act with the potential to cause mass suffering. As the prior briefing indicates, the Government has effectively conceded that Mr. Kim had no such intention. Dkt. 44. Indeed, it would have been impossible to cause "mass suffering" with only 5 grams of cyanide. Thus, per *Bond,* Mr. Kim's conduct does not come within the confines of Section 229.

Seizing on the Supreme Court's description of *Bond* as a "curious" and "unusual" case, the Government has attempted to dismiss *Bond* and argues that it should not be generally applied beyond its specific facts. Dkt. 44 at 12:26-27 (quoting *United States v. Le*, 902 F.3d 104, 110 (2d Cir. 2018) ("As the Supreme Court itself recognized, *Bond* is an 'unusual,' even 'curious,' case.") (quoting *Bond*, 572 U.S. at 860, 863). As the Supreme Court made clear, however, what made *Bond* an 'unusual' and 'curious' case was that the government chose to prosecute Bond under Section 229

for purely local conduct. *Id*. at 863; *See Bond*, 681 F.3d 149, 165 n.20 (3d Cir. 2012) ("The decision to use the Act—a statute designed to implement a chemical weapons treaty—to deal with a jilted spouse's revenge on her rival is, to be polite, a puzzling use of the federal government's power."). Indeed, the Court pointed out, there have only been a handful of prosecutions under Section 229 and those prosecutions involved terrorist plots or possession of extremely dangerous substances with the potential to cause severe harm to many people. *Id*. at 863-64 (citing *United States v. Ghane*, 673 F.3d 771 (8th Cir. 2012) (defendant possessed enough potassium cyanide to kill 450 people); *United States v. Crocker*, 260 Fed. Appx. 794 (6th Cir. 2008) (defendant attempted to acquire VX nerve gas and chlorine gas as part of a plot to attack a federal courthouse); *United States v. Krar*, 134 Fed. Appx. 662 (5th Cir. 2005) (per curiam) (defendant possessed sodium cyanide); *United States v. Fries*, 2012 WL 689157 (D. Ariz. Feb. 28, 2012) (defendant set off a homemade chlorine bomb in the victim's driveway, requiring evacuation of a residential neighborhood)). For the same reasons that *Bond* is an unusual and curious case, so too is the Government's prosecution of Mr. Kim.

The Court's citation to *Ghane* and *Krar* as permissive Section 229 prosecutions for possession of cyanide-based chemicals is instructive. In both of those cases, the defendants were accused of stockpiling massive amounts of cyanide such that the defendants had the ability to cause mass harm. *See Ghane*, 673 F.3d at 776 n.3 (agents seized approximately 177 grams of potassium cyanide from Ghane's home); and *United States v. Krar*, 134 Fed. Appx. 662 (C.A.5 2005) (per curiam) (Krar amassed in excess of 800 grams of sodium cyanide in combination with various other materials, and his apparent intent was to build a bomb for use in an act of domestic terrorism comparable to the 1995 Oklahoma City bombing.[2]). These cases are contrasted with

---

[2] The details of this prosecution are largely unavailable via PACER. However, the case received fairly extensive media coverage from which these facts were gleaned. *See, e.g.*, "Hoarder of Arms Gets 11 Years," Available at: https://www.latimes.com/archives/la-xpm-2004-may-05-na-krar5-story.html.

Mr. Kim's prosecution wherein he allegedly attempted to buy 5 grams of cyanide. Indeed, Mr. Kim is unaware of any Section 229 cyanide prosecutions that involve less than 100 grams of cyanide. *See, e.g., United States v. Michell*, 2018 WL 2688803 (D. Ariz. June 5, 2018) (Section 229 prosecution in which defendant purchased 100 grams of potassium cyanide).

**3. Use of the Internet and the U.S. Mail Do Not Change the Character of a Purely Local Assault**

In its defense of the ricin count in the original indictment, the Government's sole argument against the conclusion that Mr. Kim's conduct was "purely local" was that he used the internet to purchase the ricin, and anticipated receiving the ricin through the mail. Dkt. 44 at 13-14. The Government's sole support for this proposition was the Second Circuit's outlier decision in *United States v. Le,* 902 F.3d 104 (2d. Cir 2018).[3] Mr. Kim has consistently maintained that *Le* is not persuasive authority to support this Court's denial of this motion. Dkt. 46 at 3-9. In addition to the arguments previously raised, however, Mr. Kim also relies on the Ninth Circuit's decision in *United States v. Fries*, 781 F.3d 1137 (9th Cir. 2015). In that case, defendant Fries detonated a chlorine bomb which produced a massive gas cloud that injured several people and required an entire neighborhood to be evacuated. The Ninth Circuit found that, given the facts of the case, Fries' actions came within Section 229 because his actions constituted

[3] In the eleven months since the Second Circuit issued its decision in *Le,* not a single court has cited to *Le* as authority for any proposition. Moreover, at the oral argument for the prior iteration of this motion, the Government argued that the Supreme Court's denial of certiorari in the *Le* case indicated that the Supreme Court approved of the decision. The Government's position is legally wrong and it should be perfectly clear that: "[t]he denial of a writ of certiorari imports no expression of opinion upon the merits of the case, as the bar has been told many times." *Atlantic Coast Line R. Co. v. Powe*, 283 U.S. 401, 404 (1931) (quoting *United States v. Carver*, 260 U.S. 482, 490 (1923)); *Darr v. Burford*, 339 U.S. 200, 227 (1950) (Frankfurter, J., dissenting) ("Nothing is more basic to the functioning of this Court than an understanding that denial of certiorari is occasioned by a variety of reasons which precludes the implication that were the case here the merits would go against the petitioner").

possession and use of extremely dangerous substances with the potential to cause severe harm to many people. *Id*. at 1149 (citing *Bond*, 572 U.S. at 864).

Unlike the Supreme Court's decision in *Bond*, however, once the Ninth Circuit found that Fries' action came within the statute, the court was forced to decide the constitutionality of Section 229. In deciding that Section 229 is constitutional, the Ninth Circuit adopted the Third Circuit's reasoning in *Bond*. *Id*. at 1148 (citing *United States v. Bond*, 681 F.3d 149, 151 (3d Cir. 2012), *rev'd sub nom. Bond v. United States*, 572 U.S. 844 (2014)).

Following Bond's conviction of two counts of violating Section 229, her initial appeal was denied when the Third Circuit found that she lacked standing to challenge Section 229 as unconstitutional under the Tenth Amendment. The Supreme Court reversed, finding that a criminal defendant does have standing to challenge her conviction on the grounds that the statute is beyond the federal government's powers and inconsistent with the Tenth Amendment. *Bond v. United States*, 564 U.S. 211 (2011). On remand, the Third Circuit then considered whether Section 229 was constitutionally valid.

As previously noted, Congress enacted Section 229 to implement the CWC. The issue for the Third Circuit was whether Section 229 was validly enacted. The Third Circuit relied heavily on *Missouri v. Holland*, 252 U.S. 416 (1920), where the Court held that under the Necessary and Proper Clause, Congress may legislate to implement a valid treaty, regardless of whether Congress would otherwise have the power to act or whether the legislation causes an intrusion into what would otherwise be within the state's traditional province. *Bond*, 681 F.3d at 156 (citing *Holland*, 252 U.S. at 432-33). But, the Third Circuit recognized, legislation enacted pursuant to the Necessary and Proper Clause must be "rationally related to the implementation of a constitutionally enumerated power." *Id*. at 165 (quoting *United States v. Comstock*, 560 U.S. 126, 134 (2010)). In the treaty context, that requirement has been understood

to mean that a treaty and its implementing legislation must be rationally related to one another. *United States v. Ferreira*, 275 F.3d 1020, 1027 (11th Cir. 2001).

The Third Circuit concluded that unless Section 229 goes beyond the CWC, Section 229 is valid under the Necessary and Proper Clause and the Treaty Power. *Bond*, 681 F.3d at 165. The court concluded that the CWC pertains to the proliferation and use of chemical weapons, which are matters plainly relating to war and peace, and thus within the Treaty Power. And the court found that Section 229 tracks the language of the CWC relatively closely, and thus Section 229 is a valid exercise of Congressional power under the Necessary and Proper Clause.

In adopting *Bond*'s reasoning, the Ninth Circuit similarly found that Section 229 is valid under the Necessary and Proper Clause. *Fries*, 781 F.3d at 1148. The Second Circuit in *Le,* and the Government here (dkt. 44), have attempted to use traditional realms of federal jurisdiction, such as regulation of interstate commerce via the internet and mail, to characterize Mr. Kim's conduct as non-local. But *Fries* indicates that use of the mail and internet are *not* valid considerations. The basis for federal jurisdiction is treaty power, and thus this prosecution rises and falls on whether a treaty concerning the proliferation and use of chemical weapons was intended to criminalize individuals like Mr. Kim. With the use of the mail and Internet removed as considerations, the Court is left to again decide whether Mr. Kim's purely *local* conduct constituted an act of terrorism, an assassination, or an action with the potential to cause mass suffering.

As the Government has effectively conceded that Mr. Kim's action do not fall within any of these categories, Count 2 of the indictment must be dismissed.

**B. If Section 229 Does Reach Mr. Kim's Purely Local Conduct, Then Section 229 is Unconstitutional As Applied to Mr. Kim**

In the one post-*Bond* decision addressing the constitutionality of Section 229, the Ninth Circuit found that Section 229 is constitutional under the Necessary and Proper Clause. *Fries*, 781 F.3d at 1148. Given the Ninth Circuit's wholesale adoption of

*Bond*, it would seem Mr. Kim's facial challenge to Section 229 is foreclosed. Mr. Kim maintains, however, that the statute as applied to him is unconstitutional.

The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. Amend. X. Section 229 violates the Tenth Amendment because it breaches the principles of federalism by permitting federal prosecution of localized offenses such as domestic violence, and is not based on a valid exercise of constitutional authority.

**1. Congress Does Not Have the Power to Make Every Malicious Use of a Chemical Agent a Federal Crime**

The National Government possesses only limited powers; the States and the people retain the remainder. The States have "police power," which is the broad authority to enact legislation for the public good. *United States v. Lopez*, 514 U.S. 549, 567 (1995). The Federal Government, by contrast, has no such authority and "can exercise only the powers granted to it," *McCulloch v. Maryland*, 4 Wheat. 316, 405, 4 L. Ed. 579 (1819), including the power to make "all Laws which shall be necessary and proper for carrying into Execution" the enumerated powers, U.S. Const., Art. I, § 8, cl. 18.

There is "no better example of the police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims." *United States v. Morrison*, 529 U.S. 598, 618 (2000). "Under our federal system, the 'States possess primary authority for defining and enforcing the criminal law.'" *Lopez*, 514 U.S. at 561 n.3 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 635 (1992)); *see also Montana v. Engelhoff*, 518 U.S. 37, 43 (1996) (plurality opinion) ("preventing and dealing with crime is … the business of the States"). None of this is to deny Congress' ability to enact criminal statutes. But the federal government may step into the States' traditional criminal realm only when it targets conduct that implicates matters of national or international, not just local,

concern. "Were the Federal Government to take over the regulation of entire areas of traditional state concern," rather than limiting its laws to matters of distinctly federal concern, "the boundaries between the spheres of federal and state authority would blur and political responsibility would become illusory." *Lopez*, 514 U.S. at 577 (Kennedy, J., concurring); *see Cohens v. Virginia*, 6 Wheat. 264, 428, 5 L. Ed. 257 (1821) ("Congress cannot punish felonies generally.") and *United States v. Fox*, 95 U.S. 670, 672 (1878) (A criminal act committed wholly within a State "cannot be made an offence against the United States, unless it have [sic] some relation to the execution of a power of Congress, or to some matter within the jurisdiction of the United States.").

In keeping with that basic division of power, the Supreme Court has never accepted the argument that Congress may regulate criminal conduct with no nexus to matters of federal concern. Indeed, the Court is typically unwilling to assume that Congress even attempted to "dramatically intrude[] upon traditional state criminal jurisdiction" in this impermissible manner. *United States v. Bass*, 404 U.S. 336, 350 (1971) (construing federal firearms statute not to reach every possession of a firearm); *see Bond*, 572 U.S. 844 (construing federal chemical weapons statute to not reach every incidence of an assault committed with chemical weapons); *Jones v. United States*, 529 U.S. 848, 855 (2000) (construing federal arson statute not to reach every building). And in the rare instances when the inference that Congress actually intended such an intrusion is unavoidable, the Court has not hesitated to hold the law unconstitutional. *See, e.g., Lopez*, 514 U.S. at 567 (holding unconstitutional federal law that sought to criminalize possession of a gun in a local school zone); *Morrison*, 529 U.S. at 617 (holding unconstitutional federal law that sought to regulate all gender-motivated crimes of violence).

There can be no serious dispute that a federal effort to criminalize every malicious use of chemical agents throughout the Nation could not be reconciled with these fundamental principles. Poisonings and assaults involving harmful substances were not unknown to the Framers. Yet it would have been unthinkable to the Framers

that such matters would be anything other than a state concern. To be sure, there is some small subset of such crimes that touches on matters of federal concern. Even the Framers would recognize that attempting to poison political figures would come within the federal ambit. And more recently, few would doubt that there is a distinct federal interest in eliminating the use of chemical agents to perpetrate acts of terrorism. But a statute that purported to federalize every malicious use of a chemical agent, without regard to whether that use has any nexus to a distinct federal interest, would remain a non-starter. To accept any theory of federal power that would permit Congress to usurp the core criminal jurisdiction of the States "would require" this Court "to conclude that the Constitution's enumeration of powers does not presuppose something not enumerated." *Lopez*, 514 U.S. at 567.

Here, Mr. Kim's actions constitute, at worst, preparations made for an act of domestic violence, an act traditionally left to the states to prosecute. Because this incident does not involve an act of war, assassination, or terrorism, there is no federal interest in pursuing this charge. Accordingly, if Section 229 is deemed to reach Mr. Kim's actions, then Section 229 is unconstitutional as applied to Mr. Kim.

///

## IV. CONCLUSION

For the foregoing reasons, Mr. Kim respectfully requests that the Court dismiss count two of the first superseding indictment because Section 229 does not reach Mr. Kim's alleged conduct or Section 229 is unconstitutional as applied to Mr. Kim. To the extent the Court denied Mr. Kim's first motion to dismiss as moot, Mr. Kim respectfully requests that the Court dismiss count one of the first superseding indictment because Section 175 does not reach Mr. Kim's alleged conduct, or Section 175 is unconstitutional as applied to Mr. Kim.

Respectfully submitted,

HILARY POTASHNER
Federal Public Defender

DATED: July 22, 2019

By *ꟷ/s/ Jonathan C. Aminoff*

JONATHAN C. AMINOFF
LISA SHINAR LaBARRE
Deputy Federal Public Defenders

Attorney for STEVE KIM